**Gene STILP, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, General Assembly, Robert C. Jubelirer, and John M. Perzel, Leadership of the General Assembly, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 13, 2007.

Decided July 3, 2007.

Gene Stilp, petitioner, pro se.

Thomas W. Dymek, Philadelphia, for respondents.

BEFORE: COLINS, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this original jurisdiction matter, a resident taxpayer challenges on constitutional grounds an amendment to Article XIV of The County Code,[1] known as Act 57 of 2005,[2] which in part allowed sitting district attorneys to convert from part-time to full-time status, with an accompanying increase in compensation. The General Assembly and the presiding officer of each house are named as Respondents.

Currently before the Court are Respondents' preliminary objections to the Petition for Review filed by Gene Stilp, who is representing himself. For reasons more fully discussed below, we sustain the preliminary objection to standing and dismiss the suit.

## I. Petition for Review

The Petition for Review was filed November 1, 2006, just before the legislative elections. The basic premise of this suit is that Act 57 allows district attorneys to convert from part-time to full-time status and receive an increase in compensation after election. Stilp avers that since Act 57 became effective, 31 district attorneys converted to full-time status and received an increase in compensation during their term in office.

Stilp quotes Article III, Section 27 of the Pennsylvania Constitution, entitled

---

1. Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §§ 1401–1441.

2. Act of July 14, 2005, P.L. 312.

"**Changes in term of office or salary prohibited,**" which provides: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." PA. CONST. art. III, § 27. He avers that by enabling a mid-term increase in district attorney compensation, Act 57 violates this constitutional provision. He asks for declarations that mid-term compensation increases pursuant to Act 57 are illegal and that repayment of any illegal compensation from affected district attorneys is required.

## II. Preliminary Objections

Respondents seek dismissal of the suit on either of two bases: the General Assembly and its members are protected by legislative immunity pursuant to Article II, Section 15 of the Pennsylvania Constitution;[3] or Stilp lacks standing to challenge Act 57 because the amendment did not impact the district attorney in Dauphin County, where Stilp lives.

The rule is well settled that in ruling upon preliminary objections, the courts must accept as true all well-pleaded allegations of material facts as well as all of the inferences reasonably deducible from the facts. *Stilp v. Com.*, 910 A.2d 775 (Pa.Cmwlth.2006) (*Stilp 2006 (legislative benefits)*). For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery, and any doubt must be resolved in favor of the non-moving party. *Id.*

During our review of the Petition we must be mindful of the presumption that the legislature does not intend to violate the Constitution, and the corollary that a party asserting the unconstitutionality of a legislative act bears a heavy burden of proof. *Bible v. Dep't of Labor & Indus.*, 548 Pa. 247, 696 A.2d 1149 (1997). A statute will only be declared unconstitutional if it clearly, palpably and plainly violates the Constitution. *Ieropoli v. AC & S Corp.*, 577 Pa. 138, 842 A.2d 919 (2004).

## III. Standing
### A.

Respondents argue that Stilp is not particularly affected by Act 57 and must therefore rely on the doctrine of taxpayer standing. He fails to qualify under that doctrine, however, because he lives in a county with a full-time district attorney, and not in one of the 31 counties where a part-time district attorney chose to convert to full-time status as allowed by Act 57. Thus, Respondents argue, Stilp is not better suited than others to assert a challenge. Respondents go further and contend that granting taxpayer standing in this case would relax the standards to the point of being meaningless and would invite a virtual flood of future litigation.

In response, Stilp asserts that absent this lawsuit, Act 57 will go unchallenged. He contends that he waited for over a year, but no one in government or the private sector noticed or questioned the illegal mid-term pay raise. Further, he declares that his residency in a county with a full-time district attorney is irrelevant because state taxpayer monies are at

**3.** Article II, Section 15 of the Pennsylvania Constitution, entitled "**Privileges of members,**" provides:

The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place.
PA. CONST. art. II, § 15.

issue: the state must reimburse the counties for a portion of district attorney salaries.

As to the argument that others are better suited to bring the challenge, Stilp reminds us that he challenged the General Assembly before and that he has been granted standing in similar actions. He submits that due to his ideals, his experience and his strong belief in the plain language of the Constitution, he is qualified to represent the common interests of like-minded citizens.

### B.

■■■■ Prior to judicial resolution of a dispute, an individual must as a threshold show that he has standing to bring the action. *Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655 (2005). The traditional concept of standing focuses on the idea that a person who is not adversely impacted by the matter he seeks to challenge does not have standing to proceed with the court system's dispute resolution process. *Id.* Pennsylvania courts do not render decisions in the abstract or offer purely advisory opinions; consistent therewith, the requirement of standing arises from the principle that judicial intervention is appropriate only when the underlying controversy is real and concrete. *Id.*

■■■■ The leading Pennsylvania case on standing is *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). Our Supreme Court discussed the core concept, which is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. To establish an "aggrieved" status, a party must have a substantial interest, that is, there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. Also, an interest must be direct, which means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains. Further, the interest must be immediate and not a remote consequence of the judgment, a requirement addressing the nature of the causal connection.

Here, Stilp does not contend that Act 57 causes any discernible adverse effect to any of his interests other than the abstract interest of all citizens in having others comply with the law. Thus, it is clear Stilp does not enjoy standing under the traditional test.

### C.

In *Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918 (2006) (*Stilp 2006 (pay raise)* ), our Supreme Court was asked whether Stilp enjoyed standing to challenge a statute which granted a pay raise to all state legislators, judges and some members of the executive branch. The Court considered an exception to the traditional standing requirements, taxpayer standing:

> Under *[Application of] Biester*, [487 Pa. 438, 409 A.2d 848 (1979),] a taxpayer has standing to challenge an act if: (1) the governmental action would otherwise go unchallenged; (2) those directly and immediately affected by the complained-of matter are beneficially affected and not inclined to challenge the action; (3) judicial relief is appropriate; (4) redress through other channels is unavailable; and (5) no other persons are better suited to assert the claim.

*Id.* at 593–94, 905 A.2d at 950 (citations omitted). The Court decided Stilp enjoyed standing, stating in part as follows:

Lastly, there are no other persons better situated to assert the claim because all those directly and immediately affected by [the act in question] are beneficially affected ... and have not brought, and are not likely to bring, a cause of action in state court. This is especially so because [the act was repealed].

*Id.* at 594, 905 A.2d at 951 (footnote omitted).

The Supreme Court also discussed taxpayer standing in Pittsburgh *Palisades,* where potential applicants for slot machine gaming licenses raised constitutional challenges to a provision of a new gaming act. The provision required the Commonwealth to return huge sums of money to applicants if statutory provisions addressing the membership and function of the governing administrative agency were changed. With regard to the fifth factor of taxpayer standing, requiring no other persons be better situated to assert the claim, the Court concluded that others were better situated to assert a challenge. In particular, state legislators who might be dissuaded from amending the gaming act because of the requirement of returning large amounts of money were better situated to assert a challenge. As a result, the Court concluded that the potential applicant petitioners lacked standing.

### D.

 Similarly, here Stilp is not the best situated to assert a challenge to Act 57, and he therefore lacks taxpayer standing. First, it is uncontested that Stilp lives in a county where the district attorney's employment status was unaffected by Act 57.

Second, there are others who are better situated than Stilp to assert the challenge. In particular, county commissioners, controllers, auditors or treasurers in any of the 31 counties in which the status of the district attorney changed after Act 57 would be the best suited to challenge the statute. Those county officers with responsibility for county finances would be detrimentally affected by the county's share of increased compensation to be paid to another county officer, the district attorney. *See Com. ex rel. Rubenstein v. Lawler,* 48 D. & C.3d 644 (C.P.Bucks, 1988) (mandamus action by district attorney against county controller to require authorization of new salary resulting from change to full-time status).

As in *Pittsburgh Palisades,* the existence of other parties who do not stand to benefit from Act 57, who have a potential interest in challenging Act 57, and who, as a result of their status as county officers, appear to be better situated to assert a challenge, leads to the conclusion that Stilp fails to establish taxpayer standing.

### E.

Stilp invokes his recent success in establishing taxpayer standing in several cases. Those cases, however, do not compel the same result here. *Stilp 2006 (pay raise)* is discussed above. It involved a pay raise for all state legislators and judges, including the state legislators and judges serving Stilp. Additionally, it involved a statute the repeal of which reduced the likelihood that anyone would raise a constitutional challenge to it. Neither of those circumstances is present in this case.

In *Stilp v. Commonwealth,* 898 A.2d 36 (Pa.Cmwlth.2006) (*en banc*) (*Stilp 2006 (audit)*), Stilp brought an action to compel an audit of the legislature by the Auditor General. This Court concluded Stilp established taxpayer standing. *Id.* at 39, n. 7 (citing *Consumer Party of Pa. v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986)). The issue in that case, however,

impacted the entire Commonwealth equally.

Similarly, in *Stilp 2006 (legislative benefits)*, Stilp sought a declaration that all state legislators had access to things that benefit them beyond those items specifically permitted by the Pennsylvania Constitution. The challenge involved all state legislators, including those serving Stilp. Based on *Stilp 2006 (audit)* and *Stilp 2006 (pay raise)*, we held Stilp established taxpayer standing.

Unlike the issues raised in the recent *Stilp* cases just reviewed, Act 57 operates in a different manner. Act 57 does not mandate any change in status by any district attorney after his or her election. The only automatic change in status will occur on January 2, 2012, more than a full election cycle in the future, when the district attorneys in all counties shall become full-time. Section 2 of Act 57, 16 P.S. § 1401(m). In the six years between Act 57's enactment and 2012, part-time district attorneys are permitted to change their status. Thus, Act 57 does not operate on all district attorneys, and it does not operate on the district attorney serving Stilp. Also, Act 57 does not impact the entire Commonwealth equally. Further, the challenged provisions of Act 57 require affirmative action by a party outside state government before they become effective. Because of the substantial differences between the operation of Act 57 and the legislative actions challenged in the other

*Stilp* cases, we conclude that those cases are inapposite on the standing issue here.[4]

## IV. Summary

In summary, Stilp does not attempt to establish traditional standing. We hold that he fails to establish taxpayer standing because he cannot show that no other persons are better situated to bring the challenge. Accordingly, we sustain the preliminary objection raising standing, and we dismiss his Petition for Review. Because of our holding on the standing issue, we need not decide whether absolute legislative immunity bars the suit.

Judge McGINLEY did not participate in the decision in this case.

Judge SMITH–RIBNER did not participate in the decision in this case.

Judge COHN JUBELIRER did not participate in the decision in this case.

Judge LEAVITT did not participate in the decision in this case.

## ORDER

**AND NOW,** this 3rd day of July, 2007, Respondent's preliminary objection raising standing is **SUSTAINED,** and the Petition for Review is **DISMISSED.**

CONCURRING AND DISSENTING OPINION BY Senior Judge KELLEY.

Unlike the Majority, I believe that Respondents' preliminary objections should be overruled. Section 1401 of the County Code[1] provides, in pertinent part, that

---

**4.** We acknowledge another pending matter initiated by Stilp, *Stilp v. O'Brien*, 8 M.D. 2007, in which a constitutional challenge is raised to a recent amendment to the Liquor Code, Act 155 of 2006, which permits free drinks to be served at gaming locations. Preliminary objections to Stilp's suit include a challenge to Stilp's taxpayer standing.

The amending statute in that action operates equally throughout the Commonwealth,

including gaming locations in Dauphin County, where Stilp lives. For the reasons discussed above with regard to Stilp's other cases, the facts in *Stilp v. O'Brien* do not compel a conclusion that Stilp deserves taxpayer standing in this case.

**1.** Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1401.

"[t]he Commonwealth shall annually reimburse each county with a full-time district attorney an amount equal to sixty-five percent of the district attorney's salary." 16 P.S. § 1401(p). As a result, I believe that Stilp possesses standing to prosecute the instant matter as a taxpayer of this Commonwealth. *See, e.g., Common Cause/Pennsylvania v. Commonwealth,* 710 A.2d 108, 116 (Pa.Cmwlth.1998), *aff'd per curiam,* 562 Pa. 632, 757 A.2d 367 (2000) ("Based upon the above five factors [for taxpayer standing outlined in *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986)], we conclude that the circumstances of the present case warrant the granting of standing to petitioners. We believe that the actions taken by the General Assembly in passing HB 67 would likely go unchallenged but for the present proceeding, because the very individuals who enacted such legislation are not going to be inclined to challenge the constitutionality of the process by which Act 3 was enacted. *See League of Women Voters [of Pennsyl-*

*vania v. Commonwealth,* 692 A.2d 263 (Pa. Cmwlth.1997)]. We further believe that judicial relief may be appropriate since the ultimate function of the judiciary is to determine the constitutionality of an act. *Zemprelli v. Daniels,* 496 Pa. 247, 255–56, 436 A.2d 1165, 1169 (1981). Moreover, redress through other channels is unavailable as there is no administrative agency which can provide relief and the members of the General Assembly, themselves, are unlikely to provide a meaningful mechanism for redress. Finally, we believe that there are no other persons better situated to assert the constitutional claims which have been raised in the present case than Petitioners.").[2]

Like the Majority, I do believe that the instant petition for review should be dismissed. However, I believe that the petition should be dismissed on the basis that the relevant provisions of Section 1401 of the County Code do not violate Article 3, Section 27 of the Pennsylvania Constitution.[3] Under Section 1401(g) of the County Code[4], in counties of the eighth class, a

---

**2.** Although not addressed by the Majority, I likewise do not believe that the Speech and Debate Clause of Article 2, Section 15 of the Pennsylvania Constitution compels dismissal of the instant petition for review. *See, e.g., Common Cause/Pennsylvania,* 710 A.2d at 119 ("In the present case, Petitioners are seeking judicial review of legislative action as described in *Powell [v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)]. They have alleged that the General Assembly, as a whole, violated mandatory provisions of the Pennsylvania Constitution when it enacted Act 3. Based upon the pleadings in this case, we are not persuaded that judicial review of the legislative action taken by the General Assembly in this case is inappropriate....").

**3.** Article 3, Section 27 provides:

No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment.

PA. CONST. art. III, § 27.

**4.** Section 1401(g) of the County Code provides, in pertinent part:

(g) In counties of the eighth class, the district attorney shall be full time where any of the following apply:

(1) The commissioners of the county have by ordinance fixed the services of the district attorney at full time....

(2) The president judge of the county court of common pleas orders that the office of district attorney shall be full time. Upon motion of the district attorney, the president judge shall conduct a hearing and shall issue an order whether the office of district attorney shall be full time within 180 days of the filing of the motion.... An order under this clause directing that the office of district attorney be full time shall be made if the president judge finds that two or more of the following factors are present in the county:

(i) the average caseload of felony, misdemeanor and juvenile cases for the past five years has exceeded two hundred per year;

part-time district attorney may become a full-time district attorney either by ordinance enacted by the county commissioners or by order of the president judge of the court of common pleas following consideration of statutorily-enumerated criteria. Under Section 1401(h) of the County Code [5], in counties of the third, fourth, fifth, sixth and seventh class, a part-time district attorney either holding office or elected to office following the effective date of the statute may elect to become a full-time district attorney by filing a notice of his intention to do so with the county commissioners, the Pennsylvania Secretary of Revenue and the Pennsylvania

(ii) the average caseload for homicide cases for the past five years has equaled or exceeded one per year;

(iii) the county has any State correctional facility, juvenile detention facility, youth development center, youth forestry camp, other licensed residential facility serving children and youth, or mental health or mental retardation facility or institution, with a population exceeding two hundred fifty, or if the county has more than one such facility or institution, the aggregate population of such facilities and institutions exceeds two hundred fifty;

(iv) a major controlled substances transportation route passes through the county;

(v) the average number of convictions under 75 Pa.C.S. § 3802 (relating to driving under influence of alcohol or controlled substance) or the former 75 Pa.C.S. § 3731 (relating to driving under influence of alcohol or controlled substance) subject to the alcoholic ignition interlock statutory provision requirements exceeds thirty per year; or

(vi) the county constitutes a single and separate judicial district.

16 P.S. § 1401(g).

5. Section 1401(h) of the County Code provides:

(h) In counties of the third, fourth, fifth, sixth and seventh class:

(1) Each part-time district attorney holding office on the effective date of this subsection whose term expires January 7, 2008, shall become full time on January 2, 2006, if, after exercising due diligence in conducting an assessment of the best interests of public safety and the administration of criminal justice in the county, the part-time district attorney provides written notice to the chairman of the county commissioners, the Secretary of Revenue and the State Treasurer, no sooner than December 1, 2005, and no later than December 30, 2005, of the part-time district attorney's choice to serve as a full-time district attorney. Where a part-time district attorney holding office on the effective date of this act does not provide such notice, the office of district attorney shall remain part time for the remainder of the current term of office.

(2) A person who has been elected to the office of district attorney in a county where the district attorney is part time and whose term commences on January 2, 2006, shall, upon taking the oath of office, be a full-time district attorney if, after exercising due diligence in conducting an assessment of the best interests of public safety and the administration of criminal justice in the county, the district attorney-elect has provided written notice to the chairman of the county commissioners, the Secretary of Revenue and the State Treasurer no sooner than December 1, 2005, and no later than December 30, 2005, of the district attorney-elect's choice to serve as a full-time district attorney. Where the district attorney-elect does not provide such notice, the office of district attorney shall remain part time for the entire term of office commencing January 2, 2006.

(3) A person seeking election or re-election as district attorney in a county where the office of district attorney is a part-time position after January 2, 2006, shall, upon election and taking the oath of office, become a full-time district attorney if, prior to the deadline for filing nomination petitions or papers, the person has provided written notice to the chairman of the county commissioners, the Secretary of Revenue and the State Treasurer of the person's choice to serve as a full-time district attorney. Where the person does not provide such notice, the office of district attorney shall remain part time for the entire term of office.

16 P.S. § 1401(h).

State Treasurer. Under Section 1401(k) of the County Code[6], a full-time district attorney is precluded from engaging in private practice or receiving income from his or her former firm. Under Section 1041(i) of the County Code, "[o]nce the office of district attorney becomes full time, it shall not thereafter be changed." 16 P.S. § 1401(i). Moreover, under Section 1041(j) of the County Code, "[a] full-time district attorney shall be compensated at one thousand dollars ($1,000) lower than the compensation paid to a judge of the court of common pleas in the respective judicial district." 16 P.S. § 1401(j).[7]

In *Commonwealth ex rel. v. Corrigan*, 75 Pa. D. & C.2d 533 (1976), Judge Garb of the Court of Common Pleas of Bucks County considered an issue similar to that presented in the instant matter. In that case, the plaintiff was appointed the part-time district attorney to fill the unexpired term of his predecessor who had resigned. In the following general election, he was elected to serve a four-year term of office as the part-time district attorney for the county. During this term of office, this part-time district attorney became a full-time district attorney through the enactment of an ordinance by the county com-

missioners pursuant to a former version of Section 1401 of the County Code. Under the ordinance, the new full-time district attorney was to be paid $1,000.00 dollars less than the judges of the court of common pleas.[8] When the Controller of Bucks County refused to authorize the payment of this increased salary, the plaintiff filed an action in mandamus seeking to compel him to do so. The Controller defended on the basis that the increase in salary in the ordinance violated the provisions of Article 3, Section 27 of the Pennsylvania Constitution.

In rejecting this assertion, Judge Garb stated the following, in pertinent part:

[C]onsidering the increasing responsibilities of the office of district attorney because of the complicating nature of the developing sociology of the larger counties, particularly those immediately next to large urban centers, involving the increase in crime and the escalating complexities of the criminal law, the legislature has, most appropriately, addressed itself to a problem of great seriousness.... In order to accomplish this, it may be argued that the legislature has taken a circuitous route in order to in-

---

6. Section 1401(k) of the County Code provide:
 (k) In a county where the office of district attorney is full time, the district attorney shall devote full time to the office. The district attorney while in office, shall not derive any other income as a result of honorariums, profit shares or divisions of income from any firm with which the district attorney was associated prior to election. This limitation shall not be construed, however, to preclude payment of fees earned for legal work done prior to, but not concluded until after the earlier of his being made full time or being sworn in as a full-time district attorney. In addition the district attorney shall not engage in any private practice and must be completely disassociated with any firm with which the district attorney was affiliated prior to the earlier of being made full time or being sworn in as a full-time

district attorney. The district attorney-elect may not accept any civil or criminal cases after being elected to the office.
 16 P.S. § 1401(k).

7. Although not relevant here, it should be noted that Section 1401(m) of the County Code provides that "[e]xcept as provided in subsection (g), any office of district attorney that is part time on January 2, 2012 shall become full time as of that date." 16 P.S. § 1401(m).

8. Like the present provisions of Section 1401(j) of the County Code, the former provisions of Section 1401 directed that full-time district attorneys were to be paid $1,000.00 less than the judges of the court of common pleas.

crease the compensation of a district attorney in office trying by that circuitry to avoid encumbrance of this section of the Constitution. However, we do not view it that way. Although the legislature has fixed the salaries of district attorneys, it is nowhere mandated that it do so. The legislature may impose that duty upon the several boards of county commissioners. Rather than doing that, the legislature has vested in the county commissioners the option to determine the requirements of the office of district attorney, based upon local need, and considering the recommendations of the district attorney and the president judge. Where, in the wisdom of the county commissioners, the need for a full-time district attorney is not demonstrated, the district attorney may continue, as heretofore, as a part-time functionary receiving the salary as set forth by the legislature.... Where, however, the county commissioners determine that local needs dictate a full-time prosecutor, the county commissioners are vested with the discretion to make that determination and, upon so doing, the salary of the district attorney is commensurately increased by virtue of this act of assembly.

Of greater importance, where the duties of a public officer are significantly increased, an increase in compensation is not prohibited by this section of the Constitution. While conceivably it may be argued that this act of assembly does not increase the duties or responsibilities of the district attorney, it is clear that the act of assembly materially changes the nature of that office and, therefore, the parameters of the qualifications for said office. While it is true that district attorneys are constitutional officers, it is likewise clear that nowhere in the Constitution are his duties prescribed and, therefore, the legislature may regulate the performance of such duties.... This act of assembly provides for new and more stringent qualifications and restrictions on the person holding this high office. Most importantly, it provides, essentially, that he may receive no outside legal related income if he fills this office on a full-time basis. The quid pro quo from the district attorney is his full time and undiminished attention to the duties of district attorney, at the same time abjuring outside income. In so providing, the legislature has mandated that he shall give his undivided attention to his office, shall receive no other law-related compensation or emoluments, related or unrelated to the district attorney's office, and has, thereby, imposed upon him restrictions significantly extended beyond those which a part-time district attorney has. Recognizing that the salary of the district attorney may constitutionally be increased where the duties and responsibilities of his office are significantly increased, it is entirely logical and consistent that his salary may likewise be increased where the restrictions upon the district attorney in fulfilling that office have been made more stringent. Where the quid pro quo for an increase in salary may be found from an increase in his duties and responsibilities, we believe that there may be an equally compelling quid pro quo for an increase in salary where he has accepted significantly more severe restrictions upon his outside activities, in particular, upon a significant diminution in his outside earnings and activities. The quid pro quo imports justification for an increase in salary whether it be by virtue of an increase in his duties and responsibilities or a significant decrease in his opportunities for, and receipt of, outside income. It is clear from this that the spirit and

underlying philosophy of this provision of the Constitution is not violated, as there is no occasion for political or partisan pressure upon the district attorney in return for the implementation of this act. Therefore, we conclude that the action of the board of county commissioners in enacting ordinance no. 39 does not constitute a violation of Article III, sec. 27, of the Constitution.

*Corrigan,* 75 Pa. D. & C.2d at 539–542 (citations omitted).

Likewise, under the present provisions of Section 1401 of the County Code, a part-time district attorney that is either appointed to, or elects to, become a full-time district attorney is precluded from maintaining an outside law practice or from receiving funds from outside sources. In exchange for the increase in the duties of a full-time position, and the diminution in outside income, Section 1401 authorizes an increase in salary for the new full-time district attorney. Such a statutory scheme in no way implicates the prohibitions outlined in Article 3, Section 27 of the Pennsylvania Constitution. *Corrigan.*

Accordingly, unlike the Majority, I would overrule Respondents' preliminary objections. However, like the Majority, I would dismiss the instant petition for review.