**Barbara KEITH, Andrea Shatto, Margaret Ehmann and the Animal Legal Defense Fund, Petitioners**

v.

**COMMONWEALTH of Pennsylvania, by and through, PENNSYLVANIA DEPARTMENT OF AGRICULTURE and Secretary of Agriculture George Greig, Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 9, 2015.

Decided May 13, 2015.

Jeffrey Pierce, Cotati, CA, for petitioners.

Page Darney, Deputy Attorney General, Harrisburg, for respondents.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, ROBERT SIMPSON, Judge, and P. KEVIN BROBSON, Judge.

OPINION BY Judge BONNIE BRIGANCE LEADBETTER.

Before us for consideration is the Pennsylvania Department of Agriculture's preliminary objection to Petitioners' amended complaint in this Court's original jurisdiction requesting injunctive relief and a declaratory judgment that regulations promulgated by the Department are in conflict with the mandates set forth in the Dog Law, Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §§ 459–101–459–1205.[1] The individual Petitioners are Pennsylvania residents who each own a licensed dog. The Animal Legal Defense Fund (ALDF), of which the individual Petitioners are members, is a non-profit organization located in Cotati, California. ALDF seeks to protect the lives of animals and advance their interests.

Section 207(i)(3)(i) of the Dog Law, 3 P.S. § 459–207(i)(3)(i), prohibits Kennel Class C[2] license holders from using metal strand flooring in the primary enclosure of adult dogs. Section 207(i)(4)-(6), 3 P.S. § 459–207(i)(4)–(6), requires that Kennel Class C license holders provide adult dogs with unfettered access from the primary enclosure to an exercise area. The Department promulgated regulations, applicable only to such commercial kennels, relating to flooring in primary enclosures and access to exercise areas. The regulation at 7 Pa.Code § 28a.8(5) provides:

> Primary enclosures, including whelping boxes, housing bitches with nursing litters or housing dams or foster dams with puppies under 12 weeks of age must be constructed so that at least 50% of the flooring of the primary enclosure complies with the standards established under section 207(i)(3) of the act.

The regulation at 7 Pa.Code § 28b.1 provides that a commercial kennel owner is compliant with the requirements of Section 207(i)(6)(viii) of the Dog Law if a nursing mother is provided with daily access to an exercise area.

Petitioners assert that the Department is not authorized to exempt nursing mothers from the statutory ban on metal strand flooring and from the statutory requirement of unfettered access to exercise areas. Petitioners request that this Court enjoin the Department from enforcing 7 Pa.Code §§ 28a.8 and 28b.1, declare these sections to be in conflict with the Dog Law and, therefore, unlawful and order the Department to revise the regulations in a

---

1. In ruling upon preliminary objections, the court must accept as true all well-pleaded allegations of material facts as well as all of the inferences reasonably deducible from the facts. *Stilp v. Commonwealth*, 927 A.2d 707 (Pa.Cmwlth.2007). Further, the court must resolve any doubt in favor of the non-moving party. *Id.*

2. Kennel Class C license holders operate commercial kennels. Commercial kennel is defined as a kennel that breeds or whelps dogs and (1) either sells or transfers any dog to a dealer or pet shop or (2) sells or transfers more than 60 dogs per calendar year. 7 Pa.Code § 28a.1.

manner consistent with the Dog Law. The Department filed preliminary objections asserting that Petitioners lack standing and have not satisfied the prerequisites for obtaining a preliminary injunction. Because Petitioners had not requested a preliminary injunction, the latter objection was dismissed on November 25, 2014, so only the objection as to standing is now before the court.

▪ The Department argues that Petitioners do not have taxpayer standing recognized by the Pennsylvania Supreme Court in *In re Application of Biester*, 487 Pa. 438, 409 A.2d 848, 852 (1979).[3] Under *Biester*, taxpayers, even ones not personally aggrieved, may challenge a governmental action provided that they satisfy the following requirements: (1) the governmental action would otherwise go unchallenged, (2) *those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challenge the action*, (3) judicial relief is appropriate, (4) redress through other channels is unavailable, and (5) *no other persons are better situated to assert the claim*. *Flora v. Luzerne Cty.*, 103 A.3d 125, 132 (Pa.Cmwlth.2014) (emphasis added). The Department asserts that Petitioners are unable to satisfy the second and fifth *Biester* factors.

▪ The Department contends that Petitioners have not pled sufficient facts to show that those directly and immediately affected by the regulations are beneficially affected. The Department argues that the amended complaint is insufficient to carry Petitioners' burden because it fails to identify how the relaxed standards of the regulations provide financial benefits to commercial kennels. It further argues that even if the amended complaint alleged facts demonstrating that such kennels (non-compliant kennels) are financially benefited, there are others directly and immediately affected which are harmed by the regulations, and thus inclined to challenge them. The Department asserts that two groups of kennels would be both directly and immediately affected and harmed if commercial kennels were licensed in violation of the Dog Law: (1) commercial kennels that voluntarily provide solid flooring and unfettered access as specified in the Dog Law (compliant kennels) and (2) kennels which sell or transfer 60 or fewer dogs per calendar year to non-dealers, to which the more lenient regulations do not apply.[4] The Department argues that these kennels are the economic competitors of the non-compliant kennels and thus are being harmed by having to compete with non-compliant kennels. The Department also asserts that Petitioners cannot satisfy the fifth *Biester* factor because these economic competitors of the non-compliant commercial kennels are best situated to challenge the regulations.

---

**3.** Petitioners assert that they have taxpayer standing. They acknowledge that they do not satisfy the elements of traditional standing, which requires that they have a direct, immediate and substantial interest which is harmed by the rule they wish to challenge. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269, 280 (1975).

**4.** The Department asserts that of the 62 commercial kennels licensed in 2013, 14 provided solid flooring to all animals and seven commercial kennels provided unfettered access to enclosures to all animals. Further, of the 856 kennel class licenses issued in 2013, 371 licenses were type 1 kennel class licenses, which are issued to kennels with 50 dogs or less. These facts were provided by the Department and were not included in Petitioners' amended complaint. Therefore, these facts are not of record and we may not rely upon them in considering preliminary objections. *Lawrence v. Dep't of Corr.*, 941 A.2d 70, 71 (Pa.Cmwlth.2007) (stating that a court reviewing preliminary objections may only consider the facts pled in the complaint and documents or exhibits attached to it).

■ There are several problems with the Department's analysis. First, whether or not they can ultimately prove it, Petitioners do allege in their amended complaint that those directly affected by the regulations, i.e., the commercial kennels, benefit financially, and for purposes of these preliminary objections, we must accept the truth of such averments. Moreover, the Department's arguments concerning competition would seem to concede the point, as they appear to be based on the assumption that the regulation provides a competitive advantage to non-compliant kennels. At all events, *Biester* does not require *financial* benefit to those affected by the regulation, only benefit. It would appear self-evident that a regulation which offers the option of less than full compliance with statutory mandates affords a flexibility which can only be viewed as a benefit. Of even more importance, the Department's arguments concerning the effect of the regulations on other entities and their purported interest in enforcing the Dog Law are based on factual assertions entirely outside the allegations of the amended complaint, so we may not consider them in ruling on preliminary objections. *Lawrence.*[5] Finally, dogs and those who ultimately purchase them are the obvious beneficiaries of the health and safety protections provided by Sections 207(i)(3)(i) and 207(i)(4)-(6) of the Dog Law. Therefore, Petitioners are at least as well inclined and situated as any other entities to challenge regulations that may be in conflict with those provisions.

The purpose underlying *Biester's* relaxation of the general rules regarding standing and their requirement of a substantial, direct, and immediate interest in the matter, is to enable citizens to challenge governmental action which would otherwise go unchallenged in the courts. *Faden v. Phila. Hous. Auth.*, 424 Pa. 273, 227 A.2d 619, 621–22 (1967). Taxpayer standing "allows the courts, within the framework of traditional notions of 'standing,' to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655, 661–662 (2005) (quoting *Biester*, 409 A.2d at 851 n. 5). According to the amended complaint, prior to instituting this action, Petitioners requested that the Department review the regulations at 7 Pa.Code §§ 28a.8(b) and 28(b). Amended Complaint, Exhibit A. Petitioners also requested that the Independent Regulatory

---

**5.** No factual basis is found in Petitioners' complaint to support even the existence of any commercial kennels that now comply fully with the Dog Law. Moreover, even if there are such compliant commercial kennels, it does not necessarily follow that they would have an interest in challenging a regulation which gives them the option to utilize more lenient standards should it be in their interest to do so in the future. Nor is there any support in the complaint for the Department's assertion that any such kennels or any smaller non-commercial kennels are in direct competition with any non-compliant commercial kennels.

Moreover, we do not believe that any such kennels would have traditional standing to bring a challenge alleging competitive injury.

Under the competitive injury test, a party who alleges competitive injury has standing where (1) the competitor is subject to the same regulatory scheme and (2) the regulatory scheme prohibits competition or somehow takes competitive injury into account. *Mun. Auth. of the Boro. of W. View v. Pub. Util. Comm'n*, 41 A.3d 929 (Pa.Cmwlth.2012). Compliant kennels would be unable to satisfy the second prong of the competitive injury test because neither the Dog Law nor the Commercial Kennel Canine Health Regulations prohibit competition or take into account competitive injury. The Department asserts that this test applies only in the area of utility regulation, but review of *Borough of West View* and the cases upon which it relies belies this argument.

Review Commission (IRRC) review the regulations. Both the Department and the IRRC declined to review the regulations. Amended Complaint, Exhibits B and C. These allegations, if proven, strongly suggest that redress through other channels is futile and thus that judicial scrutiny is required to insure that the regulations adopted by the Department conform to the law under which they were promulgated.

Accordingly, we overrule the Department's preliminary objections to Petitioners' standing.

### ORDER

AND NOW, this 13th day of May, 2015, Respondents' Preliminary Objection to Petitioners' Standing is hereby overruled.