# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara Keith, Andrea Shatto,          :
Margaret Ehmann and the                :
Animal Legal Defense Fund,             :
        Petitioners            :
                         :   No.  394 M.D. 2014
            v.              :
                         :   Argued:  June 6, 2016
Commonwealth of Pennsylvania, by       :
and through, Pennsylvania Department    :
of Agriculture and Secretary of        :
Agriculture George Greig,              :
        Respondents            :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                     FILED:  September 9, 2016


Presently before this Court is the motion for summary judgment filed on behalf of Barbara Keith, Andrea Shatto, Margaret Ehmann, and the Animal Legal Defense Fund (collectively, Petitioners), as well as the cross-application for summary relief filed on behalf of the Commonwealth of Pennsylvania, by and through the Pennsylvania Department of Agriculture and Secretary of Agriculture George Greig (collectively, the Department),[1] in relation to an amended complaint filed by

---

[1] We note that Russel C. Redding has since replaced George Greig as Secretary of the Department of Agriculture.

Petitioners alleging that certain regulations enacted by the Department conflict with the mandates of the Dog Law, Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §§459-101 – 459-1205.

**Facts and Procedural History**

The individual Petitioners are Pennsylvania residents who each own a licensed dog. The Animal Legal Defense Fund (ALDF), of which the individual Petitioners are members, is a non-profit organization located in Cotati, California. ALDF seeks to protect the lives of animals and advance their interests. On October 9, 2014, Petitioners filed an amended complaint against the Department alleging that sections 28a.8(5) and 28b.1 of the Department's regulations, 7 Pa. Code §§28a.8(5), 28b.1, were invalid and contrary to the Dog Law.[2] (Amended Complaint at 2-3.)

More specifically, Petitioners alleged that while sections 207(i)(3)(i), (4) of the Dog Law, 3 P.S. §459-207(i)(3)(i), (i)(4), prohibit the use of metal strand flooring in the primary enclosure of adult dogs and require that adult dogs have unfettered clearance to an exercise area, sections 28a.8(5) and 28b.1 of the Department's regulations "eviscerated these unambiguous statutory protections" by permitting the primary enclosure for nursing mothers to include 50% metal strand flooring and only requiring that nursing mothers be provided daily access to an exercise area.[3] (Amended Complaint at 1-2.) Petitioners also alleged that the

---

[2] Petitioners filed their original complaint in July 2014, to which the Department filed preliminary objections. Shortly thereafter, Petitioners filed the amended complaint currently at issue.

[3] These regulations were part of the Commercial Kennel Canine Health Regulations promulgated by the Department in 2010. (Amended Complaint at 1.) We note that the parties regularly refer to section 28b.1 as a statement of policy. However, for purposes of consistency, we will hereafter refer to the same as a regulation.
**(Footnote continued on next page…)**

2

Department, and its Secretary are responsible for overseeing implementation and administration of the Commonwealth's agricultural laws.[4] (Amended Complaint at 3.)

Further, Petitioners alleged that: the Department was not authorized to exempt nursing mothers from the statutory protections of sections 207(i)(3)(i) and (i)(4) of the Dog Law; they would be irreparably harmed if the Department is not prohibited from enforcing its regulations because their tax dollars would be irrevocably spent on unlawful agency activity; the Court has authority to act in the public interest to enjoin a wrong that is manifest and will continue absent injunctive relief; allowing the Department to continue its unlawful exemption of nursing mothers is greater than any injury that could result to the Department; and they have a right to relief as taxpayers who are interested in ensuring the lawful expenditure of state funds to protect animals bred in commercial kennels. (Amended Complaint at 10-13.)

Petitioners noted that on November 27, 2013, more than three years after the regulations became final, the ALDF petitioned the Department and the Independent Regulatory Review Commission (IRRC) for review and repeal of the aforementioned regulations, but these petitions were denied. (Amended Complaint at 10-12.) Petitioners assert that these denials reflect the futility of future attempts to correct the regulations through the administrative process. (Amended Complaint at

---

**(continued…)**

[4] Section 221(g) of the Dog Law, added by the Act of October 9, 2008, P.L. 1450, 3 P.S. §459-221(g), establishes the Canine Health Board and authorizes the same to issue temporary guidelines to be published in the Pennsylvania Bulletin. This section also authorizes the Department to promulgate these temporary guidelines as a regulation concurrently with publication in the Pennsylvania Bulletin.

11-12.) Ultimately, Petitioners sought injunctive relief prohibiting the Department from using tax dollars to enforce these regulations and declaratory relief recognizing the invalidity of these regulatory provisions. (Amended Complaint at 2, 13.)

The Department filed preliminary objections asserting that Petitioners lacked standing and had not satisfied the prerequisites for obtaining a preliminary injunction. Because Petitioners had not filed an ancillary motion seeking a preliminary injunction, the latter objection was dismissed by order of this Court dated November 25, 2014. In March of 2015, this Court heard argument on the Department's remaining preliminary objection relating to standing. By opinion and order dated May 13, 2015, we overruled the Department's preliminary objection, concluding that Petitioners sufficiently established taxpayer standing to proceed with their action. *See Keith v. Commonwealth*, 116 A.3d 756 (Pa. Cmwlth. 2015).

We noted in our opinion that since dogs and those who ultimately purchase them are the obvious beneficiaries of the health and safety protections afforded by sections 207(i)(3)(i) and (4) of the Dog Law, "Petitioners are at least as well inclined and situated as any other entities to challenge regulations that may be in conflict with those provisions." *Keith*, 116 A.3d at 759. Additionally, we noted that Petitioners attempts at redress through other channels, i.e., requesting that the Department and the IRRC review the regulations, were "futile and thus that judicial scrutiny is required to insure that the regulations adopted by the Department conform to the law under which they were promulgated." *Id.* at 760.

The Department thereafter filed an answer with new matter denying the allegations of Petitioners' amended complaint and alleging that its actions were lawful, authorized, and appropriate. The Department further alleged that: Petitioners' allegations were legally and factually insufficient to justify the requested relief, sufficient facts could not be produced as evidence in any hearing or trial, and no

4

principles of law justify such relief; the applicable statute of limitations for any cause of action alleged in this proceeding had expired; the Department, including Secretary Greig, were immune from suit; and the principles of exhaustion of remedies, waiver, laches, estoppel, and unclean hands serve to bar the relief requested. Petitioners filed an answer to the new matter essentially denying the Department's allegations and asserting that the factual averments of its amended complaint were sufficient to justify both injunctive and declaratory relief herein.

### Petitioners' Motion for Summary Judgment

On February 11, 2016, Petitioners filed a motion for summary judgment[5] along with a statement of uncontroverted, material facts.[6] In their motion, Petitioners allege that the Department's regulations "carve out broad exemptions to key provisions of the Dog Law that are contrary to the plain language and purpose of the Dog Law." (Motion at 2.) Regarding metal strand flooring, Petitioners point out that section 207(j) of the Dog Law, 3 P.S. §459-207(j), sets forth the only exception to the prohibition against the use of this flooring, namely, permitting a kennel owner to seek a waiver from the Secretary. Contrary to the plain meaning and purpose of the Dog Law, and in excess of statutory authority, Petitioners assert that the Department has created additional exceptions under sections 28a.8(5) and 28b.1 of its regulations by

---

[5] While Petitioners stylized their motion as one for summary judgment, when such a motion is filed in our original jurisdiction it is properly characterized as a motion for summary relief. Nonetheless, the standards for both are essentially the same.

[6] Summary judgment is properly granted where pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and expert reports, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. Nos. 1035.1, 1035.2; *Commonwealth v. Peoples Benefit Services, Inc.*, 923 A.2d 1230, 1234 (Pa. Cmwlth. 2007). Summary judgment may be entered only in those cases in which the right to relief is clear and free from doubt. *Id.* (citation omitted).

allowing commercial breeders to house nursing mothers in primary enclosures with up to 50% metal strand flooring and without unfettered clearance to an exercise area.

In their accompanying statement of uncontroverted, material facts, Petitioners state that the Dog Law was extensively amended in 2008, primarily to improve the conditions at commercial dog kennels, including what are generally referred to as "puppy mills." Petitioners suggest that the legislative history reflects that the 2008 revisions to the Dog Law were specifically meant to address the issues of wire flooring and lack of exercise in commercial kennels. Petitioners note that all activities, including inspection, investigation, enforcement, and administrative oversight are funded, in part, through the Dog Law Restricted Account, which, in turn, derives revenue exclusively from the sale of dog and kennel licenses, as well as fines and penalties resulting from Dog Law violations.

Petitioners also note that while section 207(i)(5) of the Dog Law authorizes the Canine Health Board, on a case-by-case basis, to permit "an alternative means of allowing clearance from a primary enclosure to the exercise area," 3 P.S. §459-207(i)(5), section 207(i)(6)(i) reiterates that "the exercise area must allow for unfettered clearance for dogs from their primary enclosure," 3 P.S. §459-207(i)(6)(i). Finally, Petitioners state that commercial kennels benefit financially from the regulations and that they exhausted their administrative remedies through the ALDF's requests for review and repeal filed with the Department and the IRRC, both of which were denied.

The Department filed an answer to Petitioners' motion for summary judgment admitting that it promulgated the regulations at issue, but denying that it did so without statutory authority or that the regulations are contrary to the Dog Law. Instead, the Department asserts that Dog Law already provides differing requirements

6

for mother dogs and puppies and that the regulations reflect a reasonable interpretation of the statute.

The Department also filed an answer to Petitioners' statement of uncontroverted, material facts, admitting to Petitioners' recitation of the various sections of the Dog Law but denying Petitioners' characterization and/or summation of these provisions, including Petitioners' reference to the regulations as "exceptions" to the same. The Department notes that the regulations at issue were promulgated pursuant to the authority of section 902, which specifically provides that the Secretary "after due notice and a public hearing, may promulgate rules and regulations to carry out the provisions and intent of this act." 3 P.S. §459-902. The Department also notes that the term "commercial kennel" did not exist in the Dog Law until 2008, that the 2008 revisions addressed more than just the conditions at commercial kennels, and that the prohibition against metal strand flooring in section 207(i)(3)(i) applies only to the primary enclosure of adult dogs over twelve weeks of age.

Regarding any proposed amendment and the legislative history regarding the same, the Department states that the amendment sought to allow metal strand flooring in all enclosures and only mandated an opportunity for exercise, which the Department suggests explains the discussion referenced by Petitioners. The Department avers that the legislative commentary has no bearing on the regulations at issue. The Department proceeds to describe Petitioners statement that commercial kennels benefit financially from the regulations as a "broad sweeping assumption" without any foundation. (Department's Answer to Petitioners' Statement of Uncontroverted, Material Facts at 11.) Finally, the Department describes Petitioners' statement regarding exhaustion of administrative remedies as a legal conclusion to which no response was required.

7

## The Department's Cross-Application for Summary Relief

On March 28, 2016, the Department filed a cross-application for summary relief contending that it has promulgated reasonable regulations that promote the well-being of mother dogs and puppies, to which deference is required.[7] As such, the Department asserts that its right to relief is clear. At the same time, the Department filed its own statement of undisputed material facts. The Department stated therein that the parties agree that there are no genuine issues of fact in this matter, only pure issues of law, namely, whether its regulations are consistent with the Dog Law. The Department notes that there are five classes of kennels in Pennsylvania and that commercial kennels account for a relatively small portion of these kennels. For example, the Department stated that, in 2013, only sixty-two of the more than two thousand kennel licenses were for commercial kennels.

The Department indicates that section 207 of the Dog Law applies to all kennels in this Commonwealth, with subsection 207(h), 3 P.S. §459-207(h), applying to all dogs, including puppies, and section 207(i) applying only to dogs over twelve weeks of age. The Department states that the relevant statutory provisions, namely sections 207(i)(3)(i) and (i)(4), only apply to the primary enclosures of adult dogs. The Department notes that the regulations were vetted through the IRRC regulatory

---

[7] Pa.R.A.P. 1532(b) provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." The standard for summary relief is similar to the relief envisioned by the rules of civil procedure governing summary judgment. *See* Pa.R.A.P. 1532 (Official Note) (providing that subdivision (b) of Pa.R.A.P. 1532 "authorizes immediate disposition of a petition for review, similar to the type of relief envisioned by the Pennsylvania Rules of Civil Procedure regarding judgment on the pleadings and preemptory and summary judgment"); *Brittan v. Beard*, 974 A.2d 479, 484 (Pa. 2009).

review process, which extensively considered the impact of the regulations on dogs, and were originally supported by the American Society for the Prevention of Cruelty to Animals (ASPCA).[8]   Finally, the Department characterizes this matter as an attempt by Petitioners to supplant the Department's interpretations of the Dog Law with their own layperson constructions.

Petitioners filed a response to both the Department's cross-application for summary relief and its statement of undisputed material facts.   Petitioners essentially denied the contentions of the former.   Regarding the latter, Petitioners admitted to many of the statements therein, but denied the Department's statements that the regulations were not in conflict with the Dog Law, that the regulations constituted a proper exercise of the Secretary's authority, and that the ASPCA originally agreed with the regulations as promulgated.   To the contrary, Petitioners reiterate their previous position that the regulations were in direct conflict with, and in fact contrary to, the relevant provisions of the Dog Law, thereby obviating the need for any deference.   Finally, Petitioners characterize the ASPCA's original position as not supportive of the regulations, but instead a compromise in order to move forward with critical requirements relating to temperature, humidity, and ventilation.

## Discussion

As noted above, this matter involves a motion for summary judgment filed by Petitioners and an application for summary relief filed by the Department. Summary judgment is properly granted where pleadings, depositions, answers to

---

[8] The ASPCA has filed an amicus curiae brief in this case in support of Petitioners' position.

9

interrogatories, and admissions on file, together with affidavits and expert reports, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. Nos. 1035.1, 1035.2; *Commonwealth v. Peoples Benefit Services, Inc.*, 923 A.2d 1230, 1234 (Pa. Cmwlth. 2007). Summary judgment may be entered only in those cases in which the right to relief is clear and free from doubt. *Id.* (citation omitted). A request for summary relief is reviewed under a similar standard and requires the right of an applicant to be clear. Pa.R.A.P. 1532(b).

We begin with a review of the relevant statutory and regulatory provisions. Section 207(i)(3)(i) of the Dog Law states as follows:

> The floor of the primary enclosure shall be strong enough so that the floor does not sag or bend between the structural supports, shall not be able to be destroyed through digging or chewing by the dogs housed in the primary enclosure, shall not permit the feet of any dog housed in the primary enclosure to pass through any opening, <u>shall not be metal strand</u> whether or not it is coated, shall allow for moderate drainage of fluids and shall not be sloped more than 0.25 inches per foot.

3 P.S. §459-207(i)(3)(i) (emphasis added). Section 28a.8(5) of the Department's regulations, entitled "Nursing mothers," provides that:

> Primary enclosures, including whelping boxes, housing bitches with nursing litters or housing dams or foster dams with puppies under 12 weeks of age must be constructed so <u>that at least 50% of the flooring</u> of the primary enclosure complies with the standards established under section 207(i)(3) of the act.

7 Pa. Code §28a.8(5) (emphasis added).

Section 207(i)(4) of the Dog Law states as follows:

> Except as provided in paragraph (5), each primary enclosure shall have an entryway that will allow the dog

10

> unfettered clearance out of the enclosure to an exercise area under paragraph (6) unless the enclosure is closed for active cleaning under subsection (h)(11) or by order of a veterinarian under paragraph (6)(xi).

3 P.S. §459-207(i)(4) (emphasis added). Section 28b.1 of the Department's regulations, entitled "Requirement for commercial kennels," states that:

> The Bureau of Dog Law Enforcement will consider a kennel owner to be compliant with the requirements of section 207(i)(6)(viii) of the Dog Law (3 P.S. §459-207(i)(6)(viii) if the nursing mother is provided daily access to an exercise area meeting all of the requirements of section 207(i)(6)(ii), (iii), (iv), (v), (vi), (vii), (viii) and (ix) of the Dog Law.

7 Pa. Code §28b.1 (emphasis added).

Generally, "[t]he interpretation of a statute by those charged with its execution is entitled to great deference, and will not be overturned unless such construction is clearly erroneous." *Caso v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 839 A.2d 219, 221 (Pa. 2003). However, "such deference will exist only where the reviewing court is satisfied that the regulation tracks the meaning of the statute, as narrowly construed, and does not violate the intent of the legislation. . . ." *Commonwealth v. Gilmour Manufacturing Co.*, 822 A.2d 676, 679 (Pa. 2003). Indeed, our Supreme Court has recognized that:

> An interpretative rule . . . depends for its validity . . . upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets. While courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation.

11

*Philadelphia Suburban Corp. v. Board of Finance and Revenue*, 635 A.2d 116, 118 (Pa. 1993) (quoting *Girard School District v. Pittenger*, 392 A.2d 261, 263 (Pa. 1978) (further citation omitted)).

## I. Metal Strand Flooring

### A. Authority to Regulate

Petitioners argue that the Department lacked the authority to promulgate a regulation, namely section 28a.8(5), that essentially creates an exemption to the prohibition of the use of metal strand flooring in section 207(i)(3)(i) of the Dog Law. We agree.

The Department correctly notes in its brief that section 902 of the Dog Law specifically authorizes the Secretary of the Department, "after due notice and a public hearing," to "promulgate rules and regulations to carry out the provisions and intent of this act." 3 P.S §459-902. Additionally, section 207(b) of the Dog Law, relating to maintenance of kennels, further provides that "[a]ll kennels shall be maintained in a sanitary and humane condition in accordance with standards and sanitary codes promulgated by the secretary through regulations." 3 P.S. §459-207(b). However, section 28a.8(5) of the Department's regulations, permitting the primary enclosure for nursing mothers to include 50% metal strand flooring, directly contradicts with section 207(i)(3)(i) of the Dog Law, which strictly prohibits the use of metal strand flooring in the primary enclosures of any dogs over twelve weeks of age. There is no dispute that nursing mother dogs meet this age requirement. In addition, the fact that nursing mothers and puppies must be housed separately from adult dogs does not affect this prohibition.

In *Commonwealth v. Beam*, 788 A.2d 357, 359 (Pa. 2002), our Supreme Court recognized the long-adhered to precept that "the power and authority exercised

by administrative agencies must be conferred by legislative language that is clear and unmistakable." The Court in *Beam* also advised that "the rule requiring express legislative delegation is tempered by the recognition that an administrative agency is invested with the implied authority necessary to the effectuation of its express mandates." *Id.* at 360 (citations omitted.) The Department has not identified any express legislative language granting it the authority to create categorical exemptions to the provisions of the Dog Law. Again, section 207(i)(3)(i) of the Dog Law clearly and expressly prohibits the use of metal strand flooring in the primary enclosures of adult dogs.[9] Section 28a.8(5) of the Department's regulations runs contrary to this express mandate.

Further, while the Department correctly notes that section 207(i)(3)(iii) of the Dog Law, 3 P.S. §459-207(i)(3)(iii), authorizes the Department's Canine Health Board to approve additional flooring options, this section still requires such options to "meet the provisions of subparagraph (i)," where the metal strand flooring prohibition is found. Moreover, a review of other provisions of the Dog Law reveals that where the General Assembly intended to delegate authority to the Department for the promulgation of regulations, it plainly did so. For example, with respect to the lighting and ventilation requirements, the General Assembly declined to specify appropriate ranges for commercial kennels, but rather expressly delegated that authority to the Department's Canine Health Board. *See* Sections 207(h)(7) and (8) of the Dog Law, 3 P.S. §459-207(h)(7),(8).

---

[9] Indeed, as Petitioners note, a review of the relevant legislative history of the Dog Law reveals the discussion and rejection of an amendment which would have permitted metal strand flooring in all primary enclosures. *See* House Legislative Journal, September 15, 2008, pp. 1965-67.

13

## B. Reasonableness

Our Supreme Court has held that in evaluating the reasonableness of any discretionary agency action, appellate courts should "accord deference to agencies and reverse agency determinations only if they were made in bad faith or if they constitute a manifest or flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Rohrbaugh v. Pennsylvania Public Utility Commission*, 727 A.2d 1080, 1085 (Pa. 1999). Petitioners argue that the Department acted in bad faith by enacting section 28a.8(5), a regulation which accommodated the commercial kennel industry "to the detriment of fulfilling legislative intent." (Petitioners' Brief at 9.) Petitioners reiterate that section 28a.8(5) is in direct conflict with the Dog Law. The Department contends that section 28a.8(5) reflects a reasonable interpretation of the Dog Law and that it should be accorded deference as the administrative agency with expertise on the subject. For the same reasons stated above, i.e., the express prohibition against the use of metal strand flooring in section 207(i)(3)(i) of the Dog Law, the contradictory language of section 28a.8(5) of the Department's regulations, and the lack of any delegated authority, we conclude that the Department's regulation was not reasonable.

## II.  Unfettered Clearance to Exercise Area

Petitioners argue that section 28b.1 of the Department's regulations constitutes an invalid agency rule masquerading as an interpretive rule that "unequivocally binds the agency and the regulated community to a standard for compliance that conflicts with the enabling statute." (Petitioners' Brief at 11.) The Department contends that section 28b.1 constitutes a valid interpretive rule. Again, we agree with Petitioners.

14

An agency regulation can be characterized as either a legislative rule or an interpretive rule. Our Supreme Court has explained the difference between these rules as follows:

> Where an agency, acting pursuant to delegated legislative authority, seeks to establish a substantive rule creating a controlling standard of conduct, it must comply with the provisions of the Commonwealth Documents Law.[10] The Commonwealth Documents Law sets forth formal procedures for notice, comment and ultimate promulgation in connection with the making of rules that establish new law, rights or duties. Such substantive regulations, sometimes known as legislative rules, when properly enacted under the Commonwealth Documents Law, have the force of law, and enjoy a general presumption of reasonableness.
>
> Agencies also devise rules and regulations that do not in themselves establish binding standards of conduct. Such pronouncements are valid as 'interpretive rules' and need not be promulgated in accordance with the Commonwealth Documents Law to the extent that they merely construe a statute and do not improperly expand upon its terms. To be viable, an interpretive rule must genuinely track the meaning of the underlying statute, rather than establish an extrinsic substantive standard.

*Borough of Pottstown v. Pennsylvania Municipal Retirement Board*, 712 A.2d 741, 743 (Pa. 1988) (citations omitted). Because interpretive rules do not rest on legislatively-conferred rulemaking powers, they may be accorded "a lesser quantum of deference." *Northwestern Youth Services, Inc. v. Department of Public Welfare*, 66 A.3d 301, 311 (Pa. 2013).

---

[10] Act of July 31, 1968, P.L. 769, 45 P.S. §§1102-1208, and d 45 Pa. C.S. §§501-907. While the short title of the law was eliminated by subsequent amendment, it continues to be used for sake of reference.

In the present case, section 28b.1 of the Department's regulations, by effectively holding that a kennel owner need only provide daily access to an exercise area for nursing mothers to be compliant with section 207(i)(6)(viii) of the Dog Law,[11] unequivocally binds the Department and the regulated community to a standard of compliance that directly conflicts with the enabling statute, namely, section 207(i)(4) of the Dog Law. Section 28b.1 further requires the Department to refrain from enforcing the mandatory requirement of unfettered access contained therein. Similar to section 207(i)(3)(iii), section 207(i)(5) authorizes the Canine Health Board, on a case-by-case basis, to permit "an alternative means of allowing clearance from a primary enclosure to the exercise area," but only "if the kennel owner presents the board with a plan that the board determines is verifiable, enforceable and provides for exercise equal to or greater than that which the dogs would receive under paragraphs (4) and (6)(i)." 3 P.S. §459-207(i)(5). Section 207(i)(6)(i) reiterates that "[e]xcept as provided in paragraph (5), the exercise area must allow for unfettered clearance for dogs from their primary enclosure." 3 P.S. §459-207(i)(6)(i). Thus, we agree with Petitioners that section 28b.1 of the Department's regulations constituted an agency/legislative rule that was promulgated without notice and comment rulemaking and, hence, must be struck down.

Even if section 28b.1 was considered to be an interpretive rule, we would reach a similar conclusion. An agency's interpretive rule is invalid if it is "unwise or violative of legislative intent." *Northwestern Youth Services* 66 A.3d at 312 (quoting *Uniontown Area School District v. Pennsylvania Human Relations*

___

[11] Section 207(i)(6)(viii) merely provides that "[n]ursing bitches and their puppies shall be exercised separately from other dogs." This section makes no mention of the degree of access required for nursing mothers. Rather, the degree of access is controlled by sections 207(i)(4) and (i)(6)(i) of the Dog Law.

*Commission*, 313 A.2d 156, 169 (Pa. 1973)). As noted above, the legislative intent on this issue is clear. The General Assembly evidenced its intent that dogs in commercial kennels have unfettered access to an exercise area in not one, but two, express provisions of the Dog Law, i.e., sections 207(i)(4) and (i)(6)(i). The Department's pronouncement in section 28b.1 of its regulations directly contradicts this legislative intent.[12]

## Conclusion

Section 207(i)(3)(i) of the Dog Law contains an express prohibition against the use of metal strand flooring. Similarly, sections 207(i)(4) and (i)(6)(i) expressly require that dogs in commercial kennels be afforded unfettered access to an exercise area. Sections 28a.8(5) and 28b.1 of the Department's regulations directly contradict these express statutory provisions and violate the legislative intent. Hence, these regulations are invalid and must be stricken.

Accordingly, because Petitioners' right to relief is clear and free from doubt and the Department's right to relief is not, we grant Petitioners' motion for summary judgment and deny the Department's cross-application for summary relief.

_____
PATRICIA A. McCULLOUGH, Judge

---

[12] Petitioners again cite the legislative history discussing and rejecting an amendment which would have exempted nursing mothers and puppies from outdoor access and allowed commercial kennels to develop their own exercise plan. *See* House Legislative Journal, September 15, 2008, pp. 1965-67.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara Keith, Andrea Shatto,　　　　:
Margaret Ehmann and the　　　　　　:
Animal Legal Defense Fund,　　　　　:
　　　　　　　Petitioners　　　　　:
　　　　　　　　　　　　　　　　　:　　No.  394 M.D. 2014
　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
Commonwealth of Pennsylvania, by　　:
and through, Pennsylvania Department　:
of Agriculture and Secretary of　　　　:
Agriculture George Greig,　　　　　　:
　　　　　　　Respondents　　　　　:

## *ORDER*

AND NOW, this 9th day of September, 2016, the motion for summary judgment filed on behalf of Barbara Keith, Andrea Shatto, Margaret Ehmann and the Animal Legal Defense Fund is hereby granted.  The cross-application for summary relief filed on behalf of the Commonwealth is denied.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
PATRICIA A. McCULLOUGH, Judge