# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Ramos, Scott Armstrong,　　　　:
and James Williams,　　　　　　　　　: No. 150 M.D. 2016
　　　　　　　　　　　　　　　　　　: Submitted: July 22, 2016
　　　　　　　　　　Petitioners　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
Allentown Education Association;　　　　:
Public School Employees　　　　　　　:
Retirement System; and Allentown　　　　:
School District,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Respondents　　:


BEFORE:　　HONORABLE RENÉE COHN JUBELIRER, Judge
　　　　　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　　HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN　　　　　　FILED: December 21, 2016


Before this court, in our original jurisdiction, are: (1) the Petition for Review in the Nature of a Complaint for Declaratory and Equitable Relief (Petition) filed by Steven Ramos, Scott Armstrong, and James Williams (Petitioners); (2) the Answer and New Matter filed in response by respondent Allentown School District (School District);[1] (3) Preliminary Objections filed by respondent Allentown

---

[1] The School District is a public employer as defined in section 301(1) of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.301(1). (School District's Answer ¶8.)

Education Association (AEA);[2] (4) Preliminary Objections filed by the Public School Employees' Retirement System[3] (PSERS), and joined in by the School District; and (5) Petitioners' Application for Summary Relief.

This court has jurisdiction over this matter pursuant to section 761 of the Judicial Code, 42 Pa. C.S. §761. Section 761(a)(1) of the Judicial Code, 42 Pa.C.S. §761(a)1), provides that the Commonwealth Court has original jurisdiction of all civil actions or proceedings against the Commonwealth government. Here, we have jurisdiction because PSERS is a respondent. Additionally, pursuant to section 761(c) of the Judicial Code, 42 Pa.C.S. §761(c), this court has ancillary jurisdiction over the remaining respondents because Petitioners' claims against the respondents are related to the claims against PSERS.

## Procedural Posture

On February 24, 2016, Petitioners filed the Petition and an Application for Summary Relief, requesting that this court declare as unconstitutional PSERS' "pledging of the Commonwealth's credit to individuals working full-time for a

_____

[2] AEA is "the exclusive representative for collective bargaining of . . . classroom teachers, salaried substitute teachers, guidance counselors, and school nurses, among others." (School District's Answer ¶14.)

[3] The Public School Employees' Retirement Board, "which transacts business under the name of PSERS, 24 Pa. C.S. §8521(f), is an independent administrative board of the Commonwealth of Pennsylvania. 24 Pa. C.S. §8501(a)." (PSERS' Prelim. Obj. at ¶2.) PSERS administers the retirement system for public school employees "pursuant to the Public School Employees' Retirement Code," 24 Pa. C.S. §§8101-8536 (Retirement Code). (*Id.*)

teachers' union" under the practice of "full release time," as provided for in "collective bargaining agreements (CBAs) [negotiated] between" AEA and the School District since 1990. (Pet. at 1-2.) Petitioners aver that "full release time allows the AEA [p]resident to work full time for the AEA while still receiving wages, benefits including insurance, and other contractual advantages including seniority preferences and pension credits, as if he or she was still a public employee." (Pet. at 2.) Petitioners aver that full release time under the CBAs violates Article VIII, section 8 of the Pennsylvania Constitution.[4] (*Id.* ¶¶39-44, 57, 115.) Additionally, Petitioners allege that AEA and the School District were without authority to bargain for the full release time as agreed to in the CBA. (*Id.* at 17-25.) Petitioners claim that the School District and AEA lacked authority to enter into a CBA with respect to the AEA president, whom Petitioners claim is no longer a public employee, because she works full-time as AEA's president. Petitioners argue that the AEA president or any other employee on full release time is not a public employee within the meaning of section 1101-A of the Public School Code of 1949,[5] or section 301(2) of the Public Employe Relations Act,[6] and that the School District is without authority to pay the salary of, or provide public employment benefits to, a union employee. (*Id.* at 19-22.) Petitioners further argue that Article 28 of the CBA is contrary to the clearly

[4] Article VIII, section 8 of the Pennsylvania Constitution states in pertinent part, "The credit of the Commonwealth shall not be pledged or loaned to any individual, company, corporation or association . . . ."

[5] Act of March 10, 1949, P.L. 30, added by Act of July 9, 1992, P.L. 403, 24 P.S. §11-1101-A.

[6] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.301(2).

3

expressed public policy of obtaining a better education for children and, therefore, may not be enforced. (*Id*. at 24.)

Alternatively, Petitioners allege that PSERS granted pension credit to current AEA President Debra A. Tretter and former AEA President Melvin Riddick for work related to their AEA activities, contrary to sections 8102 and 8302(b) of the Public School Employees' Retirement Code[7] (Retirement Code). (*Id*. at 28 and ¶115; Appl. for Summ. Relief at 17 and ¶92.)

Petitioners request that this court declare that AEA, PSERS and the School District have acted contrary to law and that we grant a permanent injunction against continuance of the practice and order return of all improperly disbursed funds, "including the full amount of the salary, benefits, and pension illegally taken and accrued under the full time release provision." (*Id.* at 28.)

The School District filed an Answer and New Matter. In its New Matter, the School District raised three issues which it has failed to brief or raise in its statement of questions involved. First, the School District asserts that Petitioners failed to exhaust administrative remedies because they did not first raise their claim with the Pennsylvania Labor Relations Board, which it claims has exclusive jurisdiction to determine whether the parties are permitted to bargain collectively over any particular subject matter, including full release time without loss of pay or benefits for the union's agent. (School District's New Matter ¶1.) Second, the School District claims that Petitioners' claim is barred by various statutes of

---

[7] 24 Pa. C.S. §§8101-8536.

limitations.  (*Id.* ¶¶2, 3, 5.)  Without stating what those statutes of limitations might be, the School District simply avers: "applicable statute of limitations, set forth in the Public Employee [sic] Relations Act," the Judicial Code, and the Retirement Code. (*Id.*)  Third, the School District asserts, without any elaboration, that Petitioners lack standing.  (*Id.* ¶¶9-17.)  Because the School District has not briefed those claims and not identified them in its statement of questions involved, the claims are waived.  *See Plank v. Monroe County Tax Claim Bureau,* 735 A.2d 178, 182 n.9 (Pa. Cmwlth. 1999) and Pa. R.A.P. 2116(a)[8].

However, the School District has preserved the issue of whether Petitioners have failed to exhaust administrative remedies, i.e., that Petitioners should have first filed their claim with PSERS.  (School District's New Matter ¶4; School District's Br. at 1.)  Pursuant to Pa. R.A.P. 2137, the School District joins in PSERS' preliminary objections, motion to dismiss, and brief regarding that issue.

Respondent PSERS filed a preliminary objection[9] on the ground that Petitioners failed to exhaust their administrative remedies.  (PSERS' Prelim. Obj. at

---

[8] Pa. R.A.P. 2116(a) provides that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."

[9] Preliminary objections to an original jurisdiction petition for review are permissible under Pa. R.A.P. 1516(b). Our review of preliminary objections is limited to the pleadings. *Pennsylvania State Lodge, Fraternal Order of Police v. Department of Conservation and Natural Resources,* 909 A.2d 413, 415 (Pa. Cmwlth. 2006), *aff'd,* 924 A.2d 1203 (Pa. 2007).  In reviewing Respondents' preliminary objections, we must accept as true all well pleaded facts that are material and all inferences reasonably deducible from the facts.  *Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Company,* 500 A.2d 191, 194 (Pa. Cmwlth. 1986.)  "'In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections.'"  *Pennsylvania Builders Association*
**(Footnote continued on next page…)**

1, 3). PSERS asserts that the doctrines of administrative jurisdiction and exhaustion of administrative remedies require that a determination first be made at the administrative agency level. (*Id.*) PSERS observes that Petitioners did not pursue an administrative remedy with PSERS or report their claims to PSERS so that PSERS could investigate the claims. (*Id.* ¶9.) Subsequently, after receiving the School District's Answer, PSERS added the preliminary objection averring mootness. (Pet'rs' Br. in Resp. to Resp'ts' Brs. in Supp. of Prelim. Obj. at 25.)

AEA's preliminary objections claim that Petitioners: (1) lack standing, (2) failed to exhaust their administrative remedies before PSERS, and (3) failed to state a claim upon which relief may be granted. They also claim that, if this court dismisses the petition as to PSERS, we will lack jurisdiction over the Petitioners' remaining allegations.

## **Background**

This case is about a provision in the CBA between AEA and the School District that authorizes full release time from school duties for the AEA president to conduct AEA business "without a loss in wages, benefits or other contractual

---

**(continued…)**

*v. Department of Labor and Industry*, 4 A.3d 215, 220 (Pa. Cmwlth. 2010) (*en banc*) (citation omitted). Preliminary objections "should be sustained only in cases that are clear and free from doubt." *League of Women Voters of Pennsylvania v. Commonwealth,* 692 A.2d 263, 267 (Pa. Cmwlth. 1997) (*en banc*).

advantages." (Article 28 of the CBA.) The undisputed[10] facts are as follows.

Article 28 of the 2012 to 2015 CBA states:

**Article 28 – ASSOCIATION PRESIDENT RELEASE TIME**

For the term of this Agreement, *the President shall be entitled to full released time from Professional duties to conduct Association business during the work day, without loss in wages, benefits or other contractual advantages.* Any grants, stipends, awards or other alternative financial arrangements made between the AEA and the PSEA/NEA for President's released time shall be remitted to the District.

(Pet. at Ex. E; School District's Answer ¶16; PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 2.) (emphasis added.)  A similar provision authorizing full release time has been included in every CBA since 1990.  (School District's Answer ¶17; PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 2.)

Under the terms of Article 28 of the CBA, AEA is not obligated to, and in fact does not, reimburse the School District for any of the School District's costs

---

[10] Petitioners and Respondents School District and PSERS agree on the material issues of fact. (*See* Pet'rs' Appl. for Summ. Relief ¶8; School District's Answer & New Matter; and PSERS' Br. in Opp'n to Appl. for Summ. Relief at 3-6.)  AEA argues that there are material facts in dispute. (AEA's Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 8.)  AEA asserts that the record does not contain facts as to how the AEA presidents spend their time. (*Id.*)  AEA contends that the work the presidents performed for AEA constitutes "school service" for purposes of the Retirement Code, (*Id.* at 9) and that, by "being the designated point-person for the labor management requirements, which are mandated under Pennsylvania law," the president performed a service that benefited School District students and employees. (PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief, App. A, AEA's appeal on behalf of Debra Tretter from PSERS' adjustment letter at 9.)  However, there is no question that the AEA president does not perform classroom work. (*See* School District's Answer and New Matter ¶22.)

associated with full release time. (School District's Answer ¶19.) "While on 'full-release time,' the AEA President leaves the classroom and instead performs full-time work for the AEA but continues to receive wages and benefits from the (School District) that is not reimbursed by AEA." (PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 2.) The current AEA president left the classroom in 2009 to assume full release time duties for AEA, pursuant to the CBA, (School District's Answer at ¶¶20-22, 31; PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 2) and, during that time, has continued to receive wages and benefits from the School District, funded by taxpayers. (School District's Answer ¶¶11, 23.) Since 2009, the current AEA president has received approximately $555,000 in wages. (School District's Answer ¶24.)

The School District admits that Article 19 of the CBA states that "tenured professional employees shall be retained on the basis of seniority rights acquired through continuous tenured, professional service in the Allentown School District in any or all areas of certification." (*Id.* ¶31.) The School District further admits that AEA president "Tretter left 'continuous tenured, professional service in the Allentown School District' in 2009 yet has continued to accrue seniority. . . ." (*Id.*) Current AEA president Tretter, while on full release time, "has continued to accrue other contractual advantages . . . including seniority preference" and "various preferences over a number of other teachers, including but not limited to employment preference in the event of furloughs, transfers and recalls." (*Id.* ¶¶29-30.)

Petitioners claim that current AEA president Tretter "has continued to accrue pension credit despite no longer working in the classroom," that the School

8

District has contributed over $76,000 in pension contributions to PSERS on her behalf since 2009, and that the Commonwealth has reimbursed the School District over $47,000 for that period for her pension. (Pet. ¶36.) In its Answer, the School District states that it "is without sufficient knowledge and information" to respond to the allegation. (School District's Answer ¶36.) Petitioners also aver that AEA president Tretter received over $134,000 in benefits from the School District. (Pet. ¶24.)

Former AEA president Riddick was on full release time from 2001 through 2009 while working "full-time . . . for the AEA." (*Id.* ¶25.) During that time, he received "over $512,000 in wages" from the School District. (*Id.* ¶¶26-27.)

Petitioners assert that PSERS' grant of pension credit to both the current and former AEA presidents is contrary to sections 8102 and 8302(b) of the Retirement Code, 24 Pa. C.S. §§8102 and 8302(b). Section 8102 of the Retirement Code defines "Leave for service with a collective bargaining organization" as:

> Paid leave granted to an active member by an employer for purposes of working full time for or serving full time as an officer of a Statewide employee organization or a local collective bargaining representative under the act of July 23, 1970 (P.L. 563, No. 195), known as the Public Employe Relations Act: Provided, . . . that the employer shall fully compensate the member, including, but not limited to, salary, wages, pension and retirement contributions and benefits, other benefits and seniority, as if he [or she] were in full-time active service; and that *the employee organization shall fully reimburse the employer for such*

9

*salary, wages, pension and retirement contributions and benefits and other benefits and seniority.* [11]

(Emphasis added.)

Section 8302(b) of the Retirement Code states:

**Approved leaves of absence.**—An active member shall receive credit for an approved leave of absence provided that:

> (1)    the member returns for a period at least equal to the length of the leave or one year, whichever is less, to the school district which granted his leave, unless such condition is waived by the employer; and

> (2)    the proper contributions are made by the member and the employer.

PSERS has guidelines to determine whether a person not employed by a school district is eligible to accrue pension credit. (School District's Answer ¶38.) Specifically, PSERS has guidelines for purchasing credit "for an Approved Leave of Absence – Employer Verification." (*Id.* ¶¶38, 42.) "[T]here is no record of a leave of absence for AEA President Debra Tretter being approved by the Allentown School

---

[11] PSERS has explained that, in 1992, the General Assembly amended the Retirement Code by adding section 8102, "to permit a school employee to receive retirement credit if placed on an approved leave of absence to work full time for a labor union and inserted the definition of 'leave for service with a collective bargaining organization.'" (PSERS' Br. in Opp'n to Pet'rs'Appl. for Summ. Relief at 5.) PSERS explained that the amendment was in response to Attorney General Opinion No. 83-11, dated October 19, 1983, in which the Attorney General opined that a person on leave from employment as a public school employee to work full-time for a public school labor union is not entitled to active membership in PSERS because he or she did not "meet the definition of a 'school employee,' and that such service could not qualify as an approved leave of absence, because such leave was not authorized under [s]ection 8302(b) of the Retirement Code, 24 Pa. C.S. §8302(b), which defined approved leaves of absence." (PSERS' Br. in Opp'n to Pet'rs'Appl. for Summ. Relief at 4-5.)

District Board of Directors." (*Id.* ¶44.) Rather, the School District reported Tretter to PSERS "as an active member and not as a member on an approved leave of absence or leave with collective bargaining unit." (PSERS' Prelim. Obj. ¶6.) Neither current president Tretter nor former president Riddick "was placed (by the School District) on a 'leave with collective bargaining organization,'" as required by section 8102 of the Retirement Code. (PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 2.)

## **Standing of Petitioners Ramos and Armstrong**

Initially, we address AEA's preliminary objection that Petitioners lack standing to bring their Petition. "Standing is determined by the facts that exist at the time the complaint is filed." *Clark v. City of Lakewood,* 259 F.3d 996, 1006 (9th Cir. 2001). Thus, we examine whether Petitioners had standing at the time they filed their Petition.

AEA asserts that Petitioners lack standing because they do not have a "substantial interest" in the outcome that "surpasses the common interest of all citizens in procuring obedience to the law," because they have not, or will not, suffer any immediate or personal harm, and because they do not have actual harm, any harm they might suffer is "remote or speculative." (AEA's Prelim. Obj. ¶¶ 8, 9, 11.)

Petitioners Ramos and Armstrong are Allentown residents and taxpayers whose property taxes fund Allentown schools pursuant to section 672 of the Public School Code, 24 P.S. §6-672. The School District admits that the property taxes of Petitioners Ramos and Armstrong "are among the property taxes that fund the

11

Allentown School District" and that "a portion of the property taxes received are provided in the form of salary to the AEA President to perform full-time work in the capacity of AEA President."[12]  (School District's Answer ¶¶10-11.)  Petitioners attempt to take advantage of the relaxed requirements for taxpayer standing first identified in *Application of Biester,* 409 A.2d 848, 851 (Pa. 1979).

In *Biester*, the Pennsylvania Supreme Court "determined that certain cases warrant the grant of standing to taxpayers where their interest arguably is not substantial, direct and immediate." *Sprague v. Casey*, 550 A.2d 184, 187 (Pa. 1988). The purpose behind "*Biester's* relaxation of the general rules regarding standing . . . is to enable citizens to challenge governmental action which would otherwise go unchallenged in the courts." *Keith v. Pennsylvania Department of Agriculture,* 116 A.3d 756, 759 (Pa. Cmwlth. 2015).

In *Consumer Party of Pennsylvania v. Commonwealth,* 507 A.2d 323, 329 (Pa. 1986), *overruled on other grounds, Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth,* 877 A.2d 383, 408 (Pa. 2005), our Supreme Court summarized the *Biester* Court's exception to the usual requirements of standing, as follows:

> [I]n *Biester,* we held that a taxpayer seeking standing to sue must allege a substantial, direct, and immediate interest in the outcome of the suit *unless* the taxpayer can show:

---

[12] Petitioner Armstrong is also a former school board member.  (Pet. at ¶4; School District's Answer at ¶4.)  Although that may make him more informed than the average taxpayer, it adds nothing to his standing claim.

12

1. the governmental action would otherwise go unchallenged;

2. those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challenge the action;

3. judicial relief is appropriate;

4. redress through other channels is unavailable; and

5. no other persons are better situated to assert the claim.

(Emphasis added.) Applying those five factors, the Supreme Court in *Consumer Party of Pennsylvania* determined that the taxpayers had standing to challenge the constitutionality of the Public Official Compensation Law of 1983.[13]   507 A.2d at 329. Thus, to determine whether Petitioners Ramos and Armstrong have taxpayer standing, we must apply *Biester's* five factors as identified by our Supreme Court in *Consumer Party of Pennsylvania.*

The first factor of the *Biester* analysis is whether the governmental action would otherwise go unchallenged. The lack of other legal actions against the claimed misconduct is evidence that the governmental action would otherwise go unchallenged. *Pennsylvania Federation of Dog Clubs v. Commonwealth,* 105 A.3d 51, 58 (Pa. Cmwlth. 2014), *aff'd,* 115 A.3d 309 (Pa. 2015). Here, although a provision for full release time has been included in every CBA since 1990, the practice has gone unchallenged for over 25 years. (Pet'rs' Reply Br. to Resp'ts' Brs. in Supp. of Prelim. Obj. at 6; School District's Answer ¶17.) Petitioners claim that

---

[13] Act of September 30, 1983, P.L. 160, *as amended,* 65 P.S. §§366.1-336.4.

13

the full release time provision has not been heretofore challenged and that, absent the current case, "will otherwise go unheard." (Pet'rs' Reply Br. at 6.). AEA does not maintain otherwise.[14]

AEA asserts that "the ballot box" is an effective means to challenge the practice. (AEA's Br. in Supp. of Prelim. Obj. at 9-10.) AEA contends that, "[if] the people of the District do not like the agreements made by the school board, the answer is to elect new board members." (*Id.* at 10.) However, we have made clear that taxpayer standing is an *additional control* over public officials. In *Keith,* 116 A.3d at 759 (citations omitted), we explained, "[t]axpayer standing 'allows the courts, within the framework of traditional notions of 'standing,' to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts.'" If the ballot box were the only permissible control, there would be no need for taxpayer standing.

Moreover, as Petitioners point out, Petitioner Armstrong attempted to challenge the practice when he was a School District board member. (Pet. ¶6.) At the October 8, 2015, meeting of the School District's Finance Committee-of-the-Whole, Petitioner Armstrong, who was at that time a school board member, requested that the School District Solicitor research the legality of the School District's payment of the AEA president's salary. (Pet., Ex. Q at 3; School District's Answer ¶53.) The Solicitor's October 21, 2015, legal memorandum stated that, under section

---

[14] Instead, AEA asserts that Petitioners should have first raised the issue with PSERS and "PSERS would have initiated an appropriate investigation and rendered a decision on the matter." (AEA's Br. in Supp. of Prelim. Obj. at 8-9.) Because AEA's claim in this regard also goes to factors three, four, and five of the *Biester* test, we consider it in relation to those factors.

8102 of the Retirement Code, there is no authority "for the District to pay the salary of the union president to perform union responsibilities, absent reimbursement by the Association." (Pet'rs' Br. in Supp. of Appl. for Summ. Relief, App. 1 at 1.) Thereafter, at the November 19, 2015, School District board meeting, Petitioner Armstrong, still a School District board member, stated that "the solicitor's opinion [was] that paying the salary of the full-time teacher union's president was illegal." (Ex. C to Pet., School Board Minutes, 11/19/15, at 6.) Petitioners assert that, despite receipt of the solicitor's opinion, the "board refused to take action." (Pet. ¶12.d.) (*See also* Pet. at Ex. B, Affidavit of Scott Armstrong ¶9; Pet. at Ex. C, School Board Minutes, 11/19/15, at 6). None of the Respondents have denied Petitioners' assertions in this regard.

AEA also argues that the practice will not otherwise go unchallenged because the practice can be challenged through the collective bargaining process, where the interests of the School District and AEA are clearly opposed. (AEA's Br. in Supp. of Prelim. Obj. at 10.) However, that has not happened. As Petitioners note, the practice has continued for over 25 years *as a result of* the School District's collective bargaining with AEA. (*See* School District's Answer ¶17.) Thus, we conclude that Petitioners have satisfied the first factor of the *Biester* standing test.

The second factor of the *Biester* analysis is whether those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challenge the action. Here, the School District was not inclined to challenge the practice, even after the School District Solicitor rendered a legal opinion that the practice was illegal. *See* discussion, *supra*. Petitioners assert that

15

both the School District and AEA benefit from the practice of full release time and are, therefore, not inclined to challenge the expenditure. The "school board has repeatedly voted in support of full release time and receives the benefit of using full release time as a bargaining chip to secure other concessions in collective bargaining," AEA "gets a full-time employee complete with salary and benefits without having to pay for them," and PSERS continues to receive contributions from the School District and the full release employees. (Pet. ¶12.b; Pet'rs' Reply Br. at 8.)

AEA responds that, because the full release time "provision was bargained for as part of the negotiation process,"[15] we may not find that the School District was beneficially affected by the provision "[a]bsent a specific allegation of fraud or collusion." (AEA's Prelim. Obj. ¶20.) We disagree. The CBA is the

---

[15] A similar claim was made by the School District, i.e., that section 701 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.701, required the School District to bargain collectively with AEA over the subject of release time for the AEA president and, therefore, the School District cannot be liable for doing what it was required to do under the law. (School District's New Matter ¶6.) Section 701 of PERA merely defines what collective bargaining is. That section states:

> Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

It does not require public employers to bargain collectively in violation of law. Indeed, it expressly states that it "does not compel either party to agree to a proposal or require the making of a concession." *Id.*

consequence of the normal give and take process of negotiation. The collective bargaining process, by its very nature, benefits both parties involved. Neither fraud nor collusion is necessary to our analysis. Moreover, when considering preliminary objections, we must accept the truth of Petitioners' averments that the parties have benefitted from the full release time practice. *See Keith,* 116 A.3d at 759. Additionally, *Biester* does not require that the School District receive a *financial* benefit, just a benefit. *See id.* Thus, we determine that Petitioners have met the second part of the *Biester* standing test.

The third, fourth and fifth factors of the five-part *Biester* test are related and, thus, we will discuss them together. However, first we consider whether Petitioner Williams has standing.

## Standing of Petitioner Williams

Williams is a public school teacher in Pennsylvania, although not in the Allentown School District, and is a vested PSERS member, currently contributing to PSERS and accruing pension credit. (Pet. ¶5 and Ex. D; Pet'rs' Appl. for Summ. Relief ¶55.) Petitioners allege that Williams has a "substantial, direct and immediate interest in the proper functioning and solvency of PSERS, which is jeopardized by the provision of pension credit and benefits to employees not permitted by law to receive them." (Pet. ¶13.) Petitioners argue that "[e]very individual receiving pension credit and pension dollars who should not be enrolled in the system adds to PSERS' financial problems" and lessens "PSERS members' chances of receiving full retirement benefits." (Pet. ¶¶51, 52.) Petitioners assert that, pursuant to 24 Pa. C.S. §8521, PSERS "owes a fiduciary duty to the members of the system and is obligated

17

to 'invest and manage the fund for the exclusive benefit of the members of the system.'"[16] (Pet'rs' Reply Br. in Resp. to Resp'ts' Brs. In Supp. of Prelim. Obj. at 14; Pet. ¶13.)

As a PSERS member, there is no question that Williams is owed a fiduciary duty by the PSERS Board. *See* 24 Pa. C.S. §8521(e). As such he has standing. *Compare Pennsylvania School Boards Association, Inc. v. Public School Employees' Retirement Board,* 863 A.2d 432, 442 (Pa. 2004) (holding that an association lacked standing because it was not a "member" of the system).

AEA, however, contends, without citing any authority, that, before Williams may file a suit for breach of fiduciary duty, he must first give PSERS notice of his concern and PSERS must fail to respond to his concern. (AEA's Br. in Supp. of Prelim. Obj. at 7.) AEA contends that the same administrative remedy available to Petitioners Ramos and Armstrong is applicable to Petitioner Williams' breach of fiduciary duty claim. (*See* AEA's Prelim. Obj. at 10-12.) Accordingly, we continue our analysis of Petitioners' standing by examining the administrative remedies that Respondents claim are available to all Petitioners.

---

[16] 24 Pa. C.S. §8521(e) provides:

> **Fiduciary status of board.**—The members of the board, employees of the board, and agents thereof shall stand in a fiduciary relationship to the members of the system regarding the investments and disbursements of any of the moneys of the fund and shall not profit either directly or indirectly with respect thereto.

**Administrative Remedies before PSERS**

The third, fourth and fifth factors of the five-part *Biester* taxpayer standing test are: whether judicial relief is appropriate, whether redress through other channels is available, and whether other persons are better situated to assert the claim. *See Consumer Party of Pennsylvania,* 507 A.2d at 329. Because those factors relate to the standing of Ramos and Armstrong as taxpayers, as well as Williams as a PSERS member, we discuss them with respect to all three Petitioners.

AEA asserts that redress through another channel was and is available to Petitioners, making judicial relief inappropriate. (AEA's Br. in Supp. of Prelim Obj. at 9.) AEA states that "the issue is committed to the administrative jurisdiction of PSERS" and, had Petitioners raised the issue with PSERS, "PSERS would have initiated an appropriate investigation" and decided the matter. (*Id*.) Indeed, in its preliminary objections, PSERS asks us to dismiss this case because Petitioners' claim that AEA's president is not entitled to receive credited service is within the "primary and exclusive jurisdiction" of the PSERS Board. (PSERS' Prelim. Obj. ¶8.)

AEA and PSERS contend that Petitioners have failed to exhaust mandatory statutory remedies. Citing 2 Pa. C.S. §702 and 24 Pa. C.S. §8501(a), AEA claims that PSERS "has exclusive jurisdiction to initially determine whether service performed by an individual for a public school district in Pennsylvania is creditable under the Public Employees Retirement Code, subject to appellate review." (AEA's Br. in Supp. of Prelim. Obj. at 11) Citing the same statutes, PSERS claims that it "has primary and exclusive jurisdiction regarding interpretation of the Retirement

Code and the administration of member accounts, subject to appellate review." (PSERS' Prelim. Obj. at 3.)

There is no question that, where an administrative agency has exclusive jurisdiction, this court is precluded from granting declaratory relief. *See* 42 Pa. C.S. §7541(c)(2), which provides that declaratory relief is not available with respect to any proceeding "within the exclusive jurisdiction of a tribunal other than a court." Therefore, we must determine whether PSERS has exclusive jurisdiction over Petitioners' claims.

"Whether a matter lies within the exclusive jurisdiction or the primary jurisdiction of an agency is for the legislature to direct by statute." *Sunrise Energy, LLC v. FirstEnergy Corporation,* ___ A.3d ___, (Pa. Cmwlth. No. 1282 C.D. 2015, filed October 14, 2016), slip op. at 10 (*en banc*). Our examination of the statutes cited by AEA and PSERS, however, does not show that PSERS has exclusive jurisdiction over this matter. Specifically, 24 Pa. C.S. §8501(a) discusses only the composition of the PSERS board; it says nothing about jurisdiction. Additionally, 2 Pa. C.S. §702 states only that a person "aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal" to a court. We fail to see how those statutes confer exclusive jurisdiction on PSERS to hear this case. AEA has not identified any mandatory statutory remedies that Petitioners were required to, or should have, used. It is noteworthy that PSERS does not claim that any statutory remedies are available to Petitioners. Accordingly, we reject Respondents' assertion that Petitioners' claims are within the exclusive jurisdiction of PSERS.

Although PSERS does not have exclusive jurisdiction over Petitioners' claims, *Biester* requires us to determine whether "redress through other channels" is available. Thus, we next consider whether administrative remedies were available to Petitioners and whether Petitioners were required to exhaust them before seeking judicial relief.

The exhaustion of administrative remedies requirement is a judge-made rule intended to prevent premature judicial intervention into the administrative process. *National Solid Wastes Management Association v. Casey,* 580 A.2d 893, 897 (Pa. Cmwlth. 1990) (*en banc*). Generally, parties "seeking relief must exhaust available administrative remedies" before they may obtain judicial review. *Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Company*, 525 A.2d 1195, 1197 (Pa. 1987). However, the doctrine of exhaustion of administrative remedies "is neither inflexible nor absolute." *Feingold v. Bell of Pennsylvania,* 383 A.2d 791, 793 (Pa. 1977). "The mere existence of a remedy does not dispose of the question of its adequacy; the administrative remedy must be 'adequate and complete.'" *Id.* at 794 (citation omitted).

Although PSERS has no internal regulations that require or permit Petitioners to seek redress, Respondents refer us to the General Rules of Administrative Practice and Procedures, at 1 Pa. Code Part 35, as the administrative remedies which they claim Petitioners were required to follow. AEA and PSERS assert that, pursuant to 1 Pa. Code §35.5, Petitioners could have filed an informal complaint with PSERS by means of a letter. (AEA's Br. in Supp. of Prelim. Obj. at 11.) If unsatisfied with the response to the informal complaint, Petitioners could file

21

a formal complaint with PSERS, pursuant to 1 Pa. Code §35.9, "complaining of anything done or omitted to be done by a person subject to the jurisdiction of an agency, in violation of a statute or regulation administered or issued by the agency." (*Id.* at 12.) If the agency finds a violation of a statute or regulation that it has issued or administers, 1 Pa. Code §35.9 directs that "the agency will either invite the parties to an informal conference, set the matter for a formal hearing, or take another action which in the judgment of the agency is appropriate." (*Id.*) AEA asserts that Petitioners "could" also have petitioned PSERS for a declaratory order under 1 Pa. Code §35.19.[17] (*Id.* at 13.)

In *Pennsylvania Pharmacists Association v. Department of Public Welfare,* 733 A.2d 666, 672 (Pa. Cmwlth. 1999), we determined that the administrative process at 1 Pa. Code Part 35 provided an adequate remedy for the petitioners. In that case, the petitioners sought a declaration that outpatient pharmacy rates implemented under a managed care program were invalid. In requiring that the petitioners first exhaust their administrative remedy, we noted that they had already begun the administrative process when, "pursuant to 1 Pa. Code §35.19," they formally requested that the Secretary of the Department of Public Welfare review the

---

[17] 1 Pa. Code §35.19 states:

> **Petitions for declaratory orders.**
> Petitions for issuance, in the discretion of the agency, of a declaratory order to terminate a controversy or remove uncertainty, shall state clearly and concisely the controversy or uncertainty which is the subject of the petition, shall cite the statutory provision or other authority involved, shall include a complete statement of the facts and grounds prompting the petition, together with a full disclosure of the interest of the petitioner.

22

rates. *Id.* at 672. In contrast, here, Petitioners have not already begun administrative proceedings. Also, they are not challenging "decision-making" by PSERS, but rather the validity of a provision in the CBA between AEA and the School District. Moreover, unlike the petitioners in *Pennsylvania Pharmacists Association,* here, Petitioners have also made a constitutional challenge to section 8102 of the Retirement Code.

In support of its position that Petitioners were required to have first sought relief from PSERS, AEA cites *Keith,* 116 A.3d at 760, where this court determined that the petitioner dog owners met the *Biester* taxpayer standing test to contest regulations promulgated by the Department of Agriculture concerning commercial kennels. We held that redress through other channels was futile and that judicial scrutiny was required to insure that the contested regulations were lawful because, prior to filing suit, the petitioners had requested the Department of Agriculture and the Independent Regulatory Review Commission to review the regulations at issue, and both agencies declined to do so. However, that is not to say that every case requires the submission of the issue to an administrative agency before the taxpayers have standing.

Recently, in *Sunrise Energy,* slip op. at 13, this court considered a similar argument when the Public Utility Commission claimed authority to adjudicate the controversy by means of "the General Rules of Administrative Practice and Procedure." We explained that "an agency cannot confer authority upon itself by regulation. Any power exercised by an agency must be conferred by the legislature in express terms." *Id.* at 13-14. We noted that the procedure authorized by the

23

General Rules of Administrative Practice and Procedure assume "an underlying statutory basis for the agency's exercise of an adjudicatory function." *Id.* at 14.

In *Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Company,* 500 A.2d 191, 194 (Pa. Cmwlth.), *aff'd*, 525 A.2d 1195 (Pa. 1987), we declined to require an insurer to first exhaust the administrative remedies at 1 Pa. Code Part 35, before bringing an action in our original jurisdiction. Our Supreme Court affirmed, explaining that, "'[w]here the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision, exhaustion should not be required.'" *Ohio Casualty Group,* 525 A.2d at 1197 (citation omitted). The Supreme Court pointed out that "[n]ebulous claims of informal procedures or implied administrative powers are unavailing since it is clear that without a concrete procedural remedy the litigant could in no way achieve a resolution of his claim except by the grace of the party against whom he is proceeding." *Id.* at 1198. Our Supreme Court further explained:

> [I]t would clearly be better practice to first seek informal resolution of the claim, but the failure to follow the better practice does not mean the litigant is precluded from the only enforceable means by which he or she can obtain relief. The rule requiring exhaustion of administrative remedies is not intended to set up a procedural obstacle to recovery; the rule should be applied only where the available administrative remedies are adequate with respect to the alleged injury sustained and the relief requested.

*Id.*

24

Here, as in *Ohio Casualty Group,* it might have been better practice for Petitioners to first attempt to resolve their claims with PSERS, but that is not to say that they were required to do so. Additionally, at the time of the filing of the complaint, it was far from clear whether the administrative procedures could have afforded Petitioners their requested relief.

"Courts should not be too hasty in referring a matter to an agency, or to develop a 'dependence' on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's 'expertise.'" *Elkin v. Bell Telephone Company of Pennsylvania,* 420 A.2d 371, 377 (Pa. 1980). In *Elkin,* our Supreme Court provided the following guidance:

> [W]here the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility.

*Id.* (emphasis added).

Here, the subject matter is not "complex" or "peculiarly within the" expertise of PSERS, "but is one which the courts . . . are equally well-suited to determine." *See id.* As noted above, Petitioners are not challenging an adjudication made by PSERS. Rather, they are challenging the School District's practice of full

25

release time, in particular when no reimbursement has been made by a union to the school district. They are challenging the validity of a provision in the CBA between AEA and the School District, specifically whether the CBA is consistent with section 8102 of the Retirement Code, and whether section 8102 violates the Pennsylvania constitution. Those determinations do not require the special competence of PSERS. Moreover, "judicial relief is appropriate" where the constitutionality of a statute is challenged "since the determination of the constitutionality of an act is a function ultimately left to the courts." *Consumer Party of Pennsylvania,* 507 A.2d at 329. For all of the above reasons, we conclude that Petitioners have satisfied the third and fourth prongs of the *Biester* test for standing.

The fifth *Biester* factor is whether other persons are better situated to assert the claim. Recently, in *Americans for Fair Treatment, Inc. v. Philadelphia,* ___ A.3d ___ (Pa. Cmwlth., No. 1618 C.D. 2015, filed Nov. 21, 2016), we held that an association did not meet the test for taxpayer standing to contest the validity of a provision of a CBA between a school district and teachers' union, as well as the constitutionality of section 8102 of the Retirement Code. There, the school district had in the past filed a declaratory judgment action attempting to cancel the provision and was in a position to challenge the provision again because of the expiration of the CBA. In contrast, here, the School District has shown no interest in challenging the CBA provision. Additionally, in *Americans for Fair Treatment,* we determined that PSERS has the power to challenge inflated pension claims and in fact had done so in *Kirsch v. Public School Employees' Retirement Board*, 985 A.2d 671 (Pa. 2009). It is noteworthy that, in both *Kirsch* and *Americans for Fair Treatment*, the union had fully reimbursed the school district and, thus, in *Americans for Fair Treatment,* we

26

determined that there was no adverse effect on taxpayers or PSERS members. (Slip Op. at 15).

In stark contrast, here, the challenged CBA provision does not provide for reimbursement, and all parties agree that no reimbursement has occurred. Thus, all Petitioners have suffered an adverse effect from the continuing practice of full release time – Ramos and Armstrong by having a portion of their taxes fund the unreimbursed practice of full release time, and Williams by a reduction in the pension fund because PSERS may be providing pension credit to persons not entitled by law to receive credit.

Having satisfied all five prongs of the narrow exception to standing enunciated in *Biester*, Petitioners had standing at the time the Petition was filed. However, we consider below the question of whether *at this time*, changed circumstances that arose after the filing of the Petition and Application for Summary Relief have rendered this case moot.

**Current Posture of the Case**

PSERS grants retirement credit to employees, not of its own volition, but only based on information provided by the employer, "absent good cause to question the information reported." (PSERS' Prelim. Obj. at 4 n.1.) Here, the School District "did not place the AEA President[s] on a 'leave with collective bargaining organization,'" as section 8102 of the Retirement Code required. (PSERS' Br. in

27

Opp'n to Pet'rs' Appl. for Summ. Relief at 2.)  Therefore, PSERS had no reason to question the information reported by the School District about Tretter and Riddick.

However, once PSERS became aware of the facts as a result of the filing of Petitioners' Petition and Application for Summary Relief, as well as the School District's Answer and New Matter, PSERS took action, by conducting its own inquiry and making appropriate adjustments to the presidents' retirement accounts. Section 8534(b) of the Retirement Code, 24 Pa. C.S. §8534(b), requires PSERS to correct all intentional or unintentional errors in members' accounts. In other words, PSERS has a statutory duty to correct errors made by public school employers and to make actuarial adjustments to an individual member's benefit payments. *See Baillie v. Public School Employees' Retirement Board*, 993 A.2d 944, 950 (Pa. Cmwlth. 2010). That is precisely what PSERS did in this case once it became aware of the problem.

PSERS agrees with Petitioners that the AEA presidents did not meet the requirements for being on 'leave with collective bargaining organization' as set forth in the Retirement Code. (PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 6.) PSERS agrees that, here, "the AEA presidents on 'full release time' are not 'school employees' because they are not rendering 'school service' for a 'governmental entity' and are not placed on a 'leave with collective bargaining organization.'" (*Id.*) Thus, PSERS "legally agrees that the AEA President is not entitled to receive retirement credit while on 'full release time.'" (*Id.* at 3.)

More particularly, PSERS has determined that Tretter and Riddick "were not entitled to receive retirement credit while on 'full release time.'"[18] (PSERS' Br. in Opp'n to Appl. for Summ. Relief at 7-8.) "Accordingly, PSERS has removed all credited service, salary and contributions reported while Ms. Tretter and Mr. Riddick were on 'full-release time' and not on a 'leave with collective bargaining organization' as provide[d] under [s]ections 8102 and 8302(b) of the Retirement Code, 24 Pa. C.S. §§8102 and 8302(b)." PSERS notes that it "is awaiting information from the (School District) identifying the prior AEA Presidents since 1992 pursuant to its statutory obligation under [s]ection 8506(b) of the Retirement Code to 'furnish service and compensation records as well as other information requested by the board.'" (PSERS' Br. in Opp'n to Appl. for Summ. Relief at 3 n.3.)

PSERS' position in granting retirement credit for union presidents on full release time is consistent with the Retirement Code's requirements for members who are working "full time as an officer of a Statewide employee organization or a

_____

[18] By letter of April 29, 2016, PSERS notified AEA president Tretter of "its decision to move $506,421.61 from her Retirement-Covered-Compensation to Non-Retirement-Covered-Compensation" and "to remove six years of service credit" from Tretter's retirement account. (PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief, App. A at 5 ¶¶16, 18.) By letter of April 29, 2016, PSERS notified former AEA president Riddick of "its decision to move $518,804.12 from [his] Retirement-Covered-Compensation to Non-Retirement-Covered-Compensation" and "to remove eight years of service credit" from his retirement account. (*Id.*, App. B ¶¶16, 18.) Both Tretter and Riddick have filed appeals with PSERS. (*Id.*, App. A and B; AEA's Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 6.) "The regulations adopted by the PSERS Board provide for an appeal to an Executive Staff Review Committee, followed by an appeal to the full Public School Employees Retirement Board," followed by an appeal to this court, pursuant to 42 Pa. C.S. §761(a). (AEA's Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 6.)

local collective bargaining representative." 24 Pa. C.S. §8102. Relying on *Kirsch,* 929 A.2d at 667, *aff'd,* 985 A.2d 671 (Pa. 2009), PSERS explains that a member may receive retirement credit while working for a collective bargaining organization *only if*:

> (1) at least half the members of the organization are members of PSERS; (2) the employer approves the leave; (3) the collective bargaining organization reimburses the employer for the member's salary and benefits; (4) the member works full-time; and (5) the employer reports only the salary the member would have earned as a school employee.

(PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 6.)

As a result of PSERS' intervening actions, this case no longer presents an actual controversy. PSERS asserts that, because PSERS has removed the retirement credit from the accounts of Tretter and Riddick and has asked the School District to furnish records on AEA presidents going back to 1992, "no actual controversy exists." (PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 3 n.3 and 7.) PSERS points out that PSERS' removal of the retirement credits moots Petitioners' claims that the provision of credit for full release time violates public policy and is contrary to the Retirement Code. (PSERS' Br. in Supp. of its Prelim. Obj. at 9.) Therefore, PSERS argues that Petitioners fail to state a claim upon which relief may be granted due to the lack of an actual controversy.

30

A legal question can become moot as a result of an intervening change in the facts of the case. *In re Gross,* 382 A.2d 116, 119 (Pa. 1978). In that case, our Supreme Court explained:

> The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way - - changes in facts or in the law - - which allegedly deprive the litigant of the necessary stake in the outcome. *The mootness doctrine requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."*

*Id.* (quoting G. Gunther, Constitutional Law 1578 (9th ed. 1975)) (emphasis added). *See also Borough of Marcus Hook v. Pennsylvania Municipal Retirement Board,* 720 A.2d 803, 804 (Pa. Cmwlth. 1998) (citation omitted) ("To avoid dismissal, an actual case or controversy must usually exist at every stage of the judicial process"); *Strax v. Department of Transportation, Bureau of Driver Licensing*, 588 A.2d 87, 89 (Pa. Cmwlth. 1991), *aff'd*, 607 A.2d 1075 (Pa. 1992) (The general rule is that an actual case or controversy must exist at *all* stages of review).

The doctrine of ripeness "is a judicially-created principle which mandates the presence of an actual controversy." *Bayada Nurses, Inc. v. Department of Labor and Industry,* 8 A.3d 866, 874 (Pa. 2010). In that case, our Supreme Court explained the interplay of the ripeness doctrine and the Declaratory Judgments Act:

> While the right to relief under the Declaratory Judgments Act is broad, there are certain limitations upon a court's ability to make a declaration of rights. Generally, our

31

judicial system requires a real or actual controversy before it will embrace a matter for review and disposition. . . . [W]hile we do not have a constitutional case or controversy requirement, as found in our federal system, "[s]everal discrete doctrines – including standing, ripeness, and mootness – have evolved to give body to the general notions of case or controversy and justiciability."

*Id.* (citation omitted.) We have observed that "[g]enerally, courts are reluctant to grant a declaratory judgment and injunctive remedies against administrative agencies, unless the controversy is ripe for judicial resolution." *Pennsylvania Dental Hygienists' Association, Inc. v. State Board of Dentistry,* 672 A.2d 414, 416 (Pa. Cmwlth. 1996). In *Bayada Nurses,* our Supreme Court observed that the rationale for the ripeness doctrine "is to prevent premature adjudications:"

> In the context of administrative law, the basic rationale of ripeness is to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and to protect state agencies from judicial interference until an administrative decision has been formalized and its efforts felt in a concrete way by the challenging parties.

8 A.3d at 874.

Petitioners disagree that PSERS' intervening actions have made this case unripe. They note that PSERS' decisions regarding the AEA presidents' entitlement to retirement credit are not yet final because the affected members have a right to appeal, a right to a formal evidentiary hearing, and a right to appeal to the Commonwealth Court. (Pet'rs' Reply Br. in Resp. to Resp'ts' Prelim. Obj. at 26.) However, we see no reason to interfere in the ongoing administrative processes

32

before PSERS. It may be that Petitioners will deem the eventual results of PSERS' actions, to recoup the improper expenditures from the current or past presidents, sufficient. We will not engage in speculation or make an assumption that PSERS will not perform its statutory duties.

We are aware that courts have recognized exceptions to the mootness doctrine where: "(1) the conduct complained of is capable of repetition yet likely to evade judicial review; (2) the case involves issues of great public importance; or (3) one party will suffer a detriment in the absence of a court determination." *Mistich v. Pennsylvania Board of Probation and Parole,* 863 A.2d 116, 119 (Pa. Cmwlth. 2004).

Applying the exceptions to this case, we conclude that Petitioners' claims do not fall within an exception to the mootness doctrine. First, as a result of the matter being brought to the attention of PSERS and PSERS' resulting actions, it is unlikely that AEA presidents will continue to be granted pension credit without compliance with section 8102 of the Retirement Code. Second, there has been no indication that any other school districts have ignored section 8102's requirement for reimbursement. Third, Petitioners will not suffer a detriment in the absence of adjudication by this court. Indeed, PSERS' actions with respect to the AEA presidents are in line with what would have occurred had this court granted Petitioners' request for relief.

Petitioners remind us that they are challenging the constitutionality of section 8102 of the Retirement Code. (Pet'rs' Reply Br. in Resp. to Resp'ts' Prelim

33

Obj. at 26.) Petitioners argue that this matter is not moot because their constitutional challenge remains regardless of the outcome of PSERS' administrative processes with respect to the AEA presidents. (*Id.* at 25-26, 28.)

We disagree. First, we are not required to decide the constitutional issue raised by Petitioners. Courts are reluctant to decide moot questions, and even "more reluctant to decide moot questions which raise constitutional issues." *In re Gross,* 382 A.2d at 120. In that case, our Supreme Court relied on the case of *Wortex Mills, Inc. v. Textile Workers Union of America, C.I.O.,* 85 A.2d 851 (Pa. 1952), where the Court was asked to decide, as a constitutional matter, whether peaceful, organizational labor union picketing was legal. In *Wortex Mills*, the strike which had caused the picketing had ended. In declining to reach the constitutional question, the *Wortex Mills* Court instructed: "'Constitutional questions are not to be dealt with abstractly.'" *In re Gross*, 382 A.2d at 120 (citation omitted).

Second, "when faced with an issue raising constitutional and non-constitutional grounds, courts must make their decisions on non-constitutional grounds if possible and avoid the constitutional question." *Dauphin County Social Services for Children and Youth v. Department of Public Welfare*, 855 A.2d 159, 165 (Pa. Cmwlth. 2004). "It is axiomatic that if an issue can be resolved on a non-constitutional basis, that is the more jurisprudentially sound path to follow." *Wertz v. Chapman Township*, 741 A.2d 1272, 1274 (Pa. 1999).

34

Here, application of the statutory provision negates the need to engage in a constitutional analysis. *See, e.g., Blake v. State Civil Service Commission,* 133 A.3d 812, 815-16 (Pa. Cmwlth. 2016). Section 8102 of the Retirement Code requires full reimbursement to the School District by AEA of the president's "salary, wages, pension and retirement contributions and benefits and other benefits and seniority." Petitioners, PSERS, and the School District Solicitor all agree that full release time, without reimbursement from the union, is contrary to the plain language of section 8102 of the Retirement Code. PSERS has stated, "A plain reading of the Retirement Code clearly contemplates that a member who renders service for a collective bargaining organization but does not comply with the provision of the 'leave with a collective bargaining organization [of section 8102] is not entitled to receive retirement credit.'" (PSERS' Br. in Opp'n to Pet'rs' Appl. for Summ. Relief at 6.) Because PSERS has stated that it will resolve the matter in a way that is consonant with section 8102 of the Retirement Code, there is no need for us to reach the constitutional issue raised by Petitioners.

Finally and most importantly, there is no longer any actual controversy regarding the constitutionality of section 8102 of the Retirement Code with respect to the pension credits. Because PSERS has removed the retirement credit from the AEA presidents' accounts and because PSERS has determined that the presidents do not meet the requirements of section 8102 for full release time, no actual controversy continues to exist. Therefore, the question of the constitutionality of section 8102 is not ripe for our review.

35

There is no question that an actual case or controversy existed when Petitioners filed their Petition and Application for Summary Relief. However, intervening facts have significantly changed the character of this case and have made the relief requested by Petitioners against PSERS unnecessary. Here, the intervening facts demonstrate that PSERS (1) agrees with Petitioners' factual allegations; (2) has taken appropriate steps to stop the practice of allowing pension credit for full release time absent compliance with section 8102 of the Retirement Code; and (3) has taken appropriate steps going to back to 1992 to make adjustments to the retirement accounts of AEA presidents.

Accordingly, we conclude that, because of the intervening action on the part of PSERS to remove all credited service, salary and contributions reported while the current and former AEA presidents were on full release time and not on a leave with collective bargaining organization as required by sections 8102 and 8302(b) of the Retirement Code, no actual controversy continues to exist with respect to PSERS. We agree with PSERS that, because this matter is currently winding through the Board's administrative processes, Petitioners' Petition with respect to PSERS is premature and not ripe for review. Thus, it fails to state a claim upon which relief can be granted. Therefore, the preliminary objection of PSERS on the ground of mootness is sustained and this case is dismissed as to PSERS.

**Remaining Claims Against AEA and the School District**

However, Petitioners' claims against the School District and AEA regarding the School District's payment of the AEA presidents' salary; wages;

36

insurance; seniority; and other benefits, pursuant to Article 28 of the CBA, have not been rendered moot by PSERS' actions.

AEA asserts that, once PSERS is no longer a party, this court lacks jurisdiction over Petitioners' remaining claims. (AEA's Prelim Obj. at 13-14.) We agree. As we explained at the outset of this opinion, the basis for our jurisdiction is 42 Pa. C.S. §761(a)(1), based on the fact that PSERS was a respondent. Without PSERS, there is no longer a basis for exercising ancillary jurisdiction over Petitioners' claims against AEA and the School District. *See, e.g., Pittsburgh Fire Fighters, Local No. 1 ex rel. King v. Yablonsky*, 867 A.2d 666, 673 (Pa. Cmwlth. 2005) (*en banc*); *Bowers v. T-NETIX*, 837 A.2d 608, 614 (Pa. Cmwlth. 2003). Petitioners' remaining claims against AEA and the School District are properly within the jurisdiction of the Court of Common Pleas of Lehigh County. Accordingly, we transfer this matter to the Court of Common Pleas of Lehigh County for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

Judge Simpson did not participate in the decision of this case.

37

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Ramos, Scott Armstrong, :
and James Williams, : No. 150 M.D. 2016
 :
     Petitioners :
 :
     v. :
 :
Allentown Education Association; :
Public School Employees :
Retirement System; and Allentown :
School District, :
 :
     Respondents :

O R D E R

AND NOW, this 21st day of December, 2016, the preliminary objection of the Public School Employees' Retirement System is sustained for mootness, and the petition for review of Steven Ramos, Scott Armstrong, and James Williams is dismissed against the Public School Employees' Retirement System.

The preliminary objection of Allentown Education Association is sustained for lack of jurisdiction over the claims against remaining respondents Allentown Education Association and Allentown School District. The claims against Allentown Education Association and Allentown School District are TRANSFERRED to the Court of Common Pleas of Lehigh County for further proceedings consistent with this opinion.

The Chief Clerk of this court shall certify to the Prothonotary of the Court of Common Pleas of Lehigh County a photocopy of the docket entries of this case, and transmit to that court of common pleas the record, together with a copy of this opinion and order.

Jurisdiction relinquished.

_____
ROCHELLE S. FRIEDMAN, Senior Judge