IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Key,                              :
                    Petitioner            :
                                          :
        v.                                :  No. 62 M.D. 2022
                                          :
Pennsylvania Department                   :
of Corrections,                           :
                    Respondent            :  Submitted:  March 17, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                             FILED:  May 8, 2023

Currently before us are Respondent Pennsylvania Department of Corrections'
(DOC) preliminary objections to Petitioner Brandon Key's (Key) Petition for
Review (PFR). Through his PFR, which was filed in our original jurisdiction, Key,
who is currently incarcerated within our Commonwealth's state prison system at the
State Correctional Institution at Somerset (SCI-Somerset), argues that certain
aspects of DOC's procedures regarding the handling of mail sent to inmates are
unlawful and requests that we issue judgments in his favor that formally declare
them as such. After thorough review, we overrule DOC's preliminary objections and
direct it to answer the PFR within 30 days.

## I. Background

The relevant facts are as follows. DOC's administrative regulation regarding
inmate correspondence has been codified as 37 Pa. Code § 93.2,[1] in which the rules

---

[1] This administrative regulation states, in relevant part:
**(Footnote continued on next page…)**

(a) *Permitted correspondence*. Inmates are permitted to correspond with friends, family members, attorneys, news media, legitimate business contacts and public officials. There may be no limit to the number of correspondents.

(b) *Restrictions*. The following restrictions apply:

(1) Correspondence with inmates of other facilities, former inmates, probationers or victims of the criminal acts of the inmate will not be permitted except upon approval of the facility manager or a designee.

(2) Correspondence containing threatening, obscene or explicit sexual material, or nudity as well as correspondence containing criminal solicitation or furthering a criminal plan or institution misconduct is prohibited.

(3) An inmate shall refrain from writing to persons who have stated in writing that they do not wish to receive mail from the inmate. This will not be interpreted to restrict the right of inmates to correspond with public officials with respect to the official duties of the latter.

(4) Correspondence with prohibited parties through a third party is also prohibited.

(5) Mail addressed to an inmate organization will not be accepted unless the facility manager and [the] Secretary [of DOC] have approved the organization and it is addressed to the staff coordinator of the organization.

. . . .

(f) *Rejection of correspondence*. An item of correspondence which appears to violate subsection (b) may be rejected by facility mailroom staff. The inmate and the sender, in cases when the inmate is not the sender, will be notified when the letter is rejected. The letter will be held for at least 7 business days after mailing of the notification to permit reasonable opportunity to protest the decision. If the letter is rejected, it will be returned to the sender.

(g) Incoming publications.

. . . .

**(Footnote continued on next page…)**

2

are articulated regarding the handling of "incoming letters, photographs, etc., sent to inmates from outside the . . . facilities [in which the inmates are incarcerated]." PFR ¶4; *see* 37 Pa. Code § 93.2. DOC has distilled its interpretation of 37 Pa. Code § 93.2

---

(2) Publications shall be received directly from a publisher, bookstore, book club, distributor or department store. Newspapers shall be mailed directly from the publisher.

(3) Publications may not be received by an inmate if they:

(i) Contain information regarding the manufacture of explosives, incendiaries, weapons, escape devices, poisons, drugs or intoxicating beverages or other contraband.

(ii) Advocate, assist or are evidence of criminal activity, inmate misconduct, violence, insurrection or guerrilla warfare against the government.

(iii) Threaten the security of a facility.

(iv) Contain nudity, obscene material or explicit sexual materials as defined in subsection (i).

(v) Constitute a bulk mailing specifically intended for the purpose of advertising or selling merchandise.

. . . .

(5) A publication will not be prohibited solely on the basis that the publication is critical of penal institutions in general, of a particular facility, staff member, or official of [DOC], or of a correctional or penological practice in this or any other jurisdiction.

. . . .

(8) Covers of hardbound publications may be damaged or removed during inspection in the discretion of mailroom staff.

. . . .

37 Pa. Code § 93.2(a)-(b), (f), (g)(2)-(3), (5), and (8).

3

into a policy statement, titled DC-ADM 803.[2] PFR ¶9. In 2018, DOC amended DC-ADM 803 to add language mandating that inmates are barred from receiving any original photographs that have been mailed to them, but will instead be provided with DOC-generated copies of any such materials instead. *Id.* ¶10. DC-ADM 803 does not address whether those copies must contain a certain image quality or show true fidelity to the original. *Id.*

Key takes issue with two aspects of how DOC handles inmate mail, regarding both the aforementioned copies and the DOC's alleged failure to provide notice to inmates when rejecting incoming mail. With regard to the former, Key has been displeased for roughly five years with the quality of the copies provided to him by DOC, especially as to what he asserts is their "exaggerated *darkness.*" *Id.* ¶11 (emphasis in original). According to Key, "[s]ince 2018, all of the copied mail [he has] received has been overly darkened. Original [versions] on white paper are made into gray copies, and this is what [has been] given to [him]." *Id.* ¶17. These copies are often so dark that the images they contain cannot be discerned. *See id.* ¶21. Key is not the only inmate that has been so affected, as numerous other inmates at SCI-Somerset have, in recent years, also received "photograph copies that have been overly darkened[.]" *Id.* ¶20. Key sought to address this problem by filing an administrative grievance at SCI-Somerset in July 2021, through which he "complain[ed] about the overly darkened photograph copies[,]" but the grievance was subsequently denied. *Id.* ¶¶12-13. He then administratively appealed this denial to SCI-Somerset's facility manager, who affirmed the initial decision, prompting

---

[2] DEP'T OF CORR., DC-ADM 803 (2020), https://www.cor.pa.gov/About%20Us/ Documents/DOC%20Policies/803%20Inmate%20Mail%20and%20Incoming%20Publications .pdf (last visited May 5, 2023).

Key to lodge a final appeal with DOC Secretary's Office of Inmate Grievances and Appeals, which upheld the initial decision as well. *Id.* ¶¶14-16, Exs. F-I.

As for the latter, the explanation for Key's displeasure regarding DOC's mail rejection notification procedures is far more involved. In 2019, Key ordered books and photo catalogs for delivery to him at SCI-Somerset, but inexplicably received only the books, *sans* their dust jackets. *Key v. Dep't of Corr.* (Pa. Cmwlth. No. 521 M.D. 2020, filed Aug. 3, 2021), slip op. at 1-2, 2021 WL 3354888, at *1 (*Key I*).[3] Eventually, Key learned that staffers in SCI-Somerset's mailroom had discarded the dust jackets while processing the books and, in addition, had completely rejected the catalogs because Key's prisoner inmate number had not been properly listed on the catalogs' mailing labels. *Id.* This state of affairs prompted Key to file multiple inmate grievances, including one "in which he argued that the mailroom staffers' decision to reject his catalogs without affording him notice or an opportunity to contest the rejection violated 37 Pa. Code § 93.2[.]" *Id.*, slip op. at 2, 2021 WL 3354888, at *1; PFR ¶23.

These grievances were denied, whereupon Key filed a two-count action in our original jurisdiction on September 4, 2020, in which he requested that

> we order [DOC] to "amend DC-ADM 803 to give effect
> to the notice-and-hearing language of 37 Pa. Code §

---

[3] "Generally, when considering preliminary objections in the nature of a demurrer, a court may not take judicial notice of the records in another case. This general rule is subject to limited exceptions. 'It is appropriate for a court to take notice of a fact which the parties have admitted or which is incorporated into the complaint by reference to a prior court action.'" *Guarrasi v. Scott*, 25 A.3d 394, 397 n.3 (Pa. Cmwlth. 2011) (quoting *Styers v. Bedford Grange Mut. Ins. Co.*, 900 A.2d 895, 899 (Pa. Super. 2006)).

Here, Key discusses *Key I* at length in his PFR, and has even included as attachments part of our opinion that disposed of that case, as well as a number of other evidentiary items that were filed in that action. *See* PFR ¶¶22-27, 29, 31, 33; *see generally id.*, Exs. (many of the PFR's exhibits lack individual identifying designations). Accordingly, we may take judicial notice of the record from that prior matter.

93.2(f) . . . [and] conduct its inspections of inmates' incoming hardbound publications within the bounds of 37 Pa. Code § 93.2(g) by ceasing confiscations of hardbound publications' paper dust jackets that do not contain contraband."

*Key I,* slip op. at 2-4, 2021 WL 3354888, at *1-*2 (quoting *Key I* Petition for Review, Wherefore Clause). Key ordered additional books for delivery to him at SCI-Somerset while that action was pending in our Court, but an unspecified number were rejected by the facility's mailroom staffers without them notifying Key about the rejections. PFR ¶27. On August 3, 2021, we sustained DOC's preliminary objections in part to the *Key I* action, thereby dismissing Key's suit in that matter with prejudice in part and without prejudice in part. *Key I,* slip op. at 6-9, 2021 WL 3354888, at *2-*4. Then, on August 9, 2021, the United States Court of Appeals for the Third Circuit (Third Circuit) issued its decision in *Vogt v. Wetzel*, in which it held, as a matter of law, that DOC violates an inmate's right to procedural due process under the Fourteenth Amendment[4] if it rejects incoming mail without providing the inmate with adequate notice and an opportunity to challenge the rejection. 8 F.4th 182, 186-87 (3d Cir. 2021); *see* PFR ¶¶18, 28. Shortly thereafter, on August 16, 2021, Key filed an application for reargument or reconsideration (Application) in *Key I*. PFR ¶27. In its response to this Application, DOC admitted that it provides notice to inmates regarding *rejected* mail, which it defined as "mail which contains improper nude photos or books advocating violence and insurrection or a letter from another inmate[,]" but does not do so for *refused* mail, which it defined as "mail that is returned to the sender, because the inmate name or number is wrong, there is no return address, or staff cannot verify the vendor." *Id.* ¶29; DOC's *Key I* Motion for Extension of Time ¶¶7-8. DOC also stated that "[c]hanges

---

[4] U.S. CONST. amend. XIV.

6

are being made to . . . DC-ADM 803 in light of the [Third Circuit's] *Vogt* decision." PFR ¶31; DOC's *Key I* Motion for Extension of Time ¶9.[5] Despite these statements, though, DOC still persistently rejects all manner of incoming mail without notifying affected inmates. PFR ¶¶32-33.

Due to his continuing concerns regarding DOC's handling of incoming inmate mail, Key elected to file the instant, two-count action in our Court on February 11, 2022. In Count I, Key asserts that DOC's policy of providing inmates with poor quality photograph copies constitutes an absurd and unreasonable interpretation of 37 Pa. Code § 93.2. *Id.* ¶¶4-21. In Count II, he maintains that DOC's failure to institute a policy of always notifying inmates about rejected incoming mail and providing those inmates with an adequate opportunity to challenge such rejections violates DOC's administrative regulations, Pennsylvania law, and the Fourteenth Amendment's Due Process Clause. *Id.* ¶¶22-39. Accordingly, he requests that we grant him declaratory judgments on both counts, as well as "any appropriate relief." *Id.*, Wherefore Clause. In response, DOC filed the preliminary objections that are the subject of this opinion.

## II. Discussion

DOC presents three arguments for our consideration, which we summarize as follows. First, DOC demurs to Count I, because "[DOC] policies do not create rights in individuals and allegations concerning violations of policy do not state a valid claim of relief" and "[t]he only allegation [Key] has made is that the quality of the photograph[] [copies] is absurd and unreasonable and damages the photo images by routinely making the photographs unviewable [sic]." DOC's Br. at 8-9. Accordingly, in DOC's view, Key lacks the ability to state a viable claim against DOC pursuant

---

[5] Our Court did not rule upon Key's Application, rendering it denied by operation of law on September 2, 2021.

7

to DC-ADM 803 about the allegedly poor quality of those copies. *Id.* Second, regarding Count II, DOC asserts that Key lacks standing to make that claim, because he did not aver in his PFR that DOC had rejected any of his incoming mail without notifying him that it had done so. *Id.* at 9-11. Finally, DOC maintains that Count II is moot, because one of its officials sent a memo to each of DOC's "mailroom and security officers" on March 31, 2022, in which the official stated that DOC staff must notify an affected inmate "any time mail is addressed to an inmate, the inmate's identity is known, and the mail is being returned to sender, confiscated or otherwise will not be delivered to the inmate by the mailroom." *Id.* at 12-13. As such, DOC contends that Count II should be dismissed, because that claim has been rendered moot. *Id.* We address each of these arguments in turn.

> In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, . . . 648 A.2d 595, 600 ([Pa. Cmwlth.] 1994). The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on his claim, and we must resolve any doubt in favor of the petitioner. *Id.*
>
> We review preliminary objections in the nature of a demurrer under the above guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted. *Clark v. Beard*, 918 A.2d 155, 158 (Pa. Cmwlth. 2007).

*Armstrong Cnty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013).

DOC, through its first argument, has completely misapprehended the nature of the claim Key presents in Count I. Key *does not* insist that he has some sort of

actionable right under DC-ADM 803 itself to receive copies of mailed photographs that are of a certain quality; rather, he states that, as "37 Pa. Code § 93.2[] allows inmates to receive photographs through the mail . . . it is absurd and unreasonable . . . for . . . DOC to interpret [that regulation] in a manner that permits [it] to employ a copying process that does such *damage* to the photo images as to routinely make them unviewable [sic]." PFR ¶21 (emphasis in original). In other words, Count I is predicated upon Key's contention that DOC has, in effect, contravened its own administrative regulations by adhering to an apparently informal policy of providing inmates with poor quality copies of such photographs. Therefore, as DOC has attacked a claim that Key did not make, and has neglected to contest the one he did make, we are constrained to overrule its demurrer to Count I.

Moving on, DOC fares no better regarding its assertion that Key lacks standing to pursue the notice-related claim he makes in Count II.

> "In seeking judicial resolution of a controversy, a party must establish as a threshold matter that he has standing to maintain the action." *Stilp v. Com.*, 940 A.2d 1227, 1233 (Pa. 2007). In Pennsylvania, the requirement of standing is prudential in nature. *City of Philadelphia v. Com.*, 838 A.2d 566, 577 (Pa. 2003). A challenge to the standing of a party to maintain the action raises a question of law. *In re Milton Hershey Sch.*, 911 A.2d 1258 (Pa. 2006). As this Court explained in *William Penn Parking Garage v. City of Pittsburgh*, 346 A.2d 269, 280-81 (Pa. 1975) (plurality), the core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution of his challenge.
>
> An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation. *In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003). A party has a substantial interest in the outcome of litigation if his interest surpasses that "of all citizens in procuring

9

> obedience to the law." *Id.* at 1243. "The interest is direct if there is a causal connection between the asserted violation and the harm complained of; it is immediate if that causal connection is not remote or speculative." *City of Philadelphia*, 838 A.2d at 577.

*Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009).

In this instance, Key's standing to pursue Count II is readily apparent from the face of the PFR. Specifically, he avers therein that "while the [*Key I*] proceedings [were] ongoing, . . . DOC . . . rejected incoming books [he] had ordered[, but] did _not_ notify [him that it had done so]. From the book company, [he received] a copy of the envelope [in which the books had been sent], which [bore] . . . DOC's markings." PFR ¶27 (emphasis in original). Per Key's own words, a third party or parties mailed him items at his request, but that mail was rejected by DOC staffers, who did not give Key a chance to contest the rejection, let alone inform Key that the rejection had taken place. This undoubtedly gives Key an interest regarding Count II that is substantial, direct, and immediate. Consequently, we overrule DOC's preliminary objection to Key's standing.

Finally, DOC's remaining argument, regarding the alleged mootness of Count II, is procedurally improper.[6] It is well settled that "a court reviewing preliminary objections may only consider the facts pled in the [petition for review] and documents or exhibits attached to it." *Keith v. Com. ex rel. Pa. Dep't of Agric.*, 116 A.3d 756, 758 n.4 (Pa. Cmwlth. 2015) (citing *Lawrence v. Dep't of Corr.*, 941 A.2d 70, 71 (Pa. Cmwlth. 2007)). Therefore, given that DOC's mootness assertion relies entirely upon a memo that is not referenced in Key's PFR or attached thereto, we

---

[6] We note that mootness is not one of the permissible bases for lodging a preliminary objection. *See* Pa. R.Civ.P. 1028(b). However, as Key did not file a preliminary objection of his own regarding DOC's improperly raised assertion of mootness, he has waived his ability to challenge that procedural deficiency. *Bradford Cnty. Citizens in Action v. Bd. of Comm'rs of Bradford Cnty.*, 439 A.2d 1346, 1347 (Pa. Cmwlth. 1982).

10

may neither consider the memo, nor dismiss Count II on mootness grounds at this point. Furthermore, to the extent that DOC's mootness argument can be construed as a demurrer to Count II, it is improper as well. "[W]hen considering a demurrer, a court cannot consider matters collateral to the [petition for review], but must limit itself to such matters as appear therein, and an effort to supply facts missing from the objectionable pleading makes the preliminary objection in the nature of a demurrer an impermissible 'speaking demurrer.'" *Mobley v. Coleman*, 65 A.3d 1048, 1053 (Pa. Cmwlth. 2013). Accordingly, we overrule DOC's preliminary objection regarding the putative mootness of Count II.

### III. Conclusion

In light of the foregoing analysis, we overrule DOC's preliminary objections to Key's PFR and direct DOC to file an answer to the PFR within 30 days.

_____
ELLEN CEISLER, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Key,                          :
                    Petitioner        :
                                      :
        v.                            :   No. 62 M.D. 2022
                                      :
Pennsylvania Department               :
of Corrections,                       :
                    Respondent        :

# O R D E R

AND NOW, this 8th day of May, 2023, it is hereby ORDERED that Respondent Pennsylvania Department of Corrections' (DOC) preliminary objections to Petitioner Brandon Key's Petition for Review (PFR) are OVERRULED. It is FURTHER ORDERED that DOC shall file an answer to the PFR within 30 days.

 

_____
ELLEN CEISLER, Judge